Argued April 4, accused suspended for 60 days June 27, 1978

In re Complaint as to the conduct of
JERRY W. HENDRICKS, *Accused.*
(No. 1312, SC 25593)
580 P2d 188

Richard W. Butler, Eugene, argued the cause for accused. With him on the briefs were Thwing, Atherly & Butler, Eugene.

Jon A. Joseph, Eugene, argued the cause for Oregon State Bar. With him on the brief was Robert G. Dickinson, Eugene.

PER CURIAM.

## PER CURIAM.

This is a disciplinary proceeding. The Oregon State Bar charged the accused with seven acts of unethical conduct. The Trial Board found the accused guilty of five of the charges and not guilty of the other charges.

The Trial Board recommended that the accused "be suspended from the practice of law in the State of Oregon for a period of sixty (60) days and thereafter until he has made application for reinstatement and an affirmative showing, by evidence satisfactory to the Board of Governors and the Supreme Court, that he is, in all respects, again able and qualified, by good moral character and otherwise, to accept the obligations and faithfully perform the duties of an attorney in the state of Oregon."

The Disciplinary Review Board adopted the "Findings of Fact and Conclusions of the Trial Board" but varied the recommendations as follows:

"1. The Trial Board recommends suspension for 60 days and thereafter until the applicant has reapplied for readmission and has made a sufficient showing of fitness. The Review Board recommends suspension for 60 days, followed by automatic reinstatement, but upon probation subject to compliance by the Accused with the affirmative requirements of paragraph 3.

"* * * * *.

"3. The Board further recommends in this case that temporary suspension be combined with probation until Mr. Hendricks has furnished to the Secretary of the Oregon State Bar proof that he has successfully completed a course in legal ethics at one of the accredited law schools in the state of Oregon This recommendation is not intended as a punitive addition to the suspension, but to underscore the relationship of professional responsibility to the right to practice law."

The charges generally allege that the accused received the sum of $4,000 from his clients, Mr. and Mrs. Graham, for his personal use and to help defray his expenses while attending graduate school in New York. The complaint specifically alleges that the

accused acted in an unethical manner and in violation of the standards of professional conduct "[b]y receiving the sum of $4,000 from his clients for personal use without recommending to his clients that they secure disinterested advice from an independent, competent person * * *"; that he knew of the financial circumstances of his clients and that such circumstances did not justify the advancement to him of the $4,000 at the time he proposed the transaction; that he made false representations to his clients and failed to repay the $4,000 promptly upon request; that he accepted the $4,000 from his clients when at that time the clients were substantially indebted to his employer law firm; that he failed to disclose such facts to his employer law firm and thereafter failed to disclose to his employer law firm the true facts concerning his transactions with his and the firm's clients, Mr. and Mrs. Graham.

We have reviewed all of the testimony and exhibits offered before the Trial Board. The accused was admitted to practice law in September of 1966. He worked with one attorney for approximately 10 months and then accepted employment with his employer law firm in July of 1967. The Grahams were clients of this firm, and accused became closely acquainted with them while handling their work for the law firm. The record shows that the Grahams had financial problems but were receiving a sum of money from property they owned in Montana. At the same time, accused decided he would like to matriculate in taxation at New York University. He was worried about his lack of funds. The law firm agreed to pay him $100 per month while he was on leave to take the course in taxation. The firm did not know that he had received the $4,000 from the Grahams.

On May 19, 1969, Mrs. Graham gave accused, per her husband's instructions, the $4,000 here involved, but accused did not advise his employer law firm of this fact until January, 1976. Subsequent to the $4,000 advancement, the Grahams had domestic difficulties.

The accused left for New York University on August 29, 1969. He returned to Oregon in June, 1970, and resumed his employment with the same law firm. Some of the above facts had surfaced before accused left for New York—when Mrs. Graham sought other legal advice and demanded payment on the $4,000. However, the real difficulty arose when accused's employer law firm assigned Mr. Graham's indebtedness for legal services to a collection agency. The above is a brief summary of the facts. There is other evidence to support the Trial Board's findings. We concur in the Findings of Fact and Conclusions of the Trial Board.

It is an axiom that attorneys should not borrow or accept gifts of money from their clients unless the client has advice from independent counsel or a knowledgeable person. The transaction should also be reduced to writing, fully explaining the circumstances. *In re Brown,* 277 Or 121, 134, 559 P2d 884 (1977). The accused should have disclosed his proposed dealings with the Grahams to the other members of the law firm by whom he was employed. The accused "admits that he should not have accepted the funds from the Grahams, that he should have advised them to seek independent legal advice and that he should have fully disclosed the transaction to his employers."

The accused has made full restitution to Mr. and Mrs. Graham. He argues that "[t]he problems which arose are directly related to his then naivete, inexperience and youth" and therefore the punishment should be reduced to a public reprimand.

We deem the accused's unethical conduct warrants more than a public reprimand and conclude that he be suspended from the practice of law for a period of 60 days from the entry of the mandate herein. The Oregon State Bar is awarded judgment against accused for its costs and disbursements.