Argued and submitted September 7,
accused reprimanded November 14, 1979

# In Re Complaint as to the Conduct of
# RICHARD J. BROWNSTEIN, *Accused*

## (Trial Board No. 1282)
## (SC No. 26187)

602 P2d 655

Clifford N. Carlsen, Jr., of Miller, Anderson, Nash, Yerke & Wiener, Portland, argued the cause and filed briefs for the accused.

David J. Buono, of Lindstedt & Buono, Portland, argued the cause for the Oregon State Bar. With him on the brief was Desmond D. Connall, Portland.

Before Denecke, Chief Justice, and Holman, Tongue, Howell, Lent, and Linde, Justices.

PER CURIAM.

## PER CURIAM.

The accused is charged with a conflict of interest arising out of a transaction involving a small, closely held corporation, its stockholders and a third party who loaned money to the corporation and became a stockholder as part of the transaction. The accused was found guilty by the trial and review boards, both of which recommended a reprimand.

James Woods first consulted the accused in 1973 concerning the incorporation of his janitorial business. The incorporation was never consummated. Thereafter, in the fall of 1973, at the request of Woods, his father, and one Ogston, the accused incorporated a drapery manufacturing and sales business with a capital of $15,000. Woods and his father each received 35 per cent of the stock with Ogston receiving the remaining 30 per cent. Thereafter, the accused represented the corporation on an almost monthly basis concerning routine legal matters. The corporation seemed, at first, to prosper. However, it was short of operating capital and, apparently, its ability to generate business was in excess of its ability to produce drapes.

In the spring of 1974, the accused represented Woods in the sale of his janitorial business. When it subsequently became apparent in the fall of 1974 that without more capital the drapery business could not survive, the accused put Woods in touch with a Mr. Whitcomb who was represented by the accused when Whitcomb needed legal advice and who was known by the accused to invest in small, highly speculative firms. After two or three months of investigation and negotiation, Woods, his father, and Whitcomb came to the accused in December of 1974 to draw the necessary legal documents to carry out their arrangements. This resulted in Whitcomb's loaning the corporation $15,000 for which he received a corporate note personally guaranteed by the father and son and their wives. By this time Ogston had resigned as a

corporate officer and had dropped out of active participation in corporate affairs. In addition to the note, Whitcomb was issued stock in the corporation. At the time of the consummation of this arrangement, no discussion was held concerning whom the accused was representing nor was any mention made of a possible conflict of interest or of the advisability of the participants having independent counsel.

The affairs of the corporation did not prosper and after his termination as counsel for the corporation, the accused attempted upon behalf of Whitcomb to collect from Woods on his personal guaranty of the corporate note. The accused is charged with representing Woods in the transaction with Whitcomb and then representing Whitcomb in an attempt to enforce Whitcomb's rights arising out of that same transaction.

The accused contends he was representing the corporation, which, undoubtedly, he was. He billed the corporation for his services relating to the loan transaction in question, billed neither Woods nor Whitcomb for any services relating to it, and was looked upon by the original stockholders as the corporate attorney. However, since Whitcomb was becoming a stockholder in the corporation as part of the transaction, the billing of the corporation for the accused's services is not determinative of whether he represented the corporation solely when all individuals were now interested in the central pot, *i.e.,* the corporation. It was a natural way to pay for the services if the accused also represented all the other parties involved. Whitcomb thought the accused was representing him and so testified.

Woods's testimony is equivocal, and if his testimony concerning whether the accused represented him individually at the time he guaranteed the corporate note was necessary to a finding of a conflict of interest, we would find the accused not guilty. However, as we have indicated in *In re Banks,* 283 Or 459, 584 P2d 284, 284 Or 691, 588 P2d 34 (1978), in a small, closely

[86]

held corporation the rights of the individual stockholders who control the corporation and of the corporation are virtually identical and inseparable. As an example, the accused's work sheets show that one time he consulted Woods with reference to the "payment of salaries versus dividends" by the corporation. There is no indication that dividends were ever paid. Where a small, closely held corporation is involved, and in the absence of a clear understanding with the corporate owners that the attorney represents solely the corporation and not their individual interests, it is improper for the attorney thereafter to represent a third party whose interests are adverse to those of the stockholders and which arise out of a transaction which the attorney handled for the corporation. In actuality, the attorney in such a situation represents the corporate owners in their individual capacities as well as the corporation unless other arrangements are clearly made. *In re Banks, supra.* An attorney may not represent, nor appear to represent, a person in a transaction and then subsequently represent another who has an adverse interest arising therefrom. *In re Mumford/Thompson,* 285 Or 559, 591 P2d 1377 (1979).

This court does not say that a lawyer cannot put together small transactions in which the amounts involved are not large enough to justify the expense required for each interested party to have individual representation. However, when such a transaction is handled, it should be with extreme caution and with a clear and explicit understanding concerning whom the lawyer represents. In the absence of such an understanding, the attorney should represent no party to the transaction if thereafter a dispute arises among the parties relative to it. If, at the request of the parties, the lawyer represents all the parties to the transaction, he has the duty to explain to them the conflicts of interest that exist between them.

There were two counts against the accused arising out of the same transaction. Because of the view we

[87]

take of the count here discussed, consideration of the other count is unnecessary.

It is our conclusion that the suggested reprimand is a proper disposition, and this opinion will serve as such. In fairness to the accused, it should be remarked that the conduct in question here occurred before our opinion in *In re Banks, supra.* Disbursements are awarded to the Oregon State Bar.