Argued and submitted September 9, 1980, Accused suspended February 4, petition for rehearing denied, March 4, 1981

In re: Complaint as to the Conduct of

# RALF H. ERLANDSON,
*Accused.*

(OSB 1361, SC 26822)

622 P2d 727

Ralf H. Erlandson, Canby, argued the cause and filed the briefs in propria persona.

William B. Wyllie, Salem, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM.

**PER CURIAM.**

The Oregon State Bar filed a complaint against the accused attorney charging five acts of professional misconduct. The Trial Board and the Disciplinary Review Board both found the accused guilty of all five charges.

We state the charges and evidence against the accused only in summary form because of the ultimate disposition of the proceeding.

The accused was charged with fraud in a real estate transaction. DR 1-102(A)(4) provides that a lawyer shall not commit fraud. The purchasers in the transaction, the Castors, brought a fraud action against the accused and recovered $8,500 general damages and $30,000 punitive damages. The judgment was affirmed by this court. *Castor v. Erlandson,* 277 Or 147, 560 P2d 267 (1977). The record in the *Castor* case was introduced into evidence at the disciplinary hearing and some testimony was received on the issue, including testimony by the accused. The accused contended the judgment was procured by perjured testimony, subornation of perjury, false or misleading statements, and as part of a conspiracy to injure the accused. The Trial Board found these contentions were not proved and that the accused had committed fraud. We do not find it necessary to decide whether the judgment itself is conclusive proof of accused's fraud. *Cf. In re Robert Neil Gygi,* 273 Or 443, 541 P2d 1392 (1975). The judgment and record in the *Castor* case, together with the unsatisfactory nature of the testimony of the accused before the Trial Board causes us to find that the accused did commit fraud.

The accused also was charged with having a conflict of interest with a client, Troutman. DR 5-104(A) provides:

> "A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

The accused was attorney for Troutman and business organizations in which Troutman had a substantial interest. The accused and Troutman formed a partnership, each making some contribution which allegedly had value. Erlandson represented the partnership as attorney.

The partners had disputes and Troutman brought litigation against the accused alleging the accused furnished Troutman false financial information and made other fraudulent misrepresentations, all concerning the accused's contributions to the partnership, with the intent of defrauding Troutman.

In the formation of this partnership the accused and Troutman had "differing interests therein" in that their contributions consisted of properties of uncertain value and promises of financial assistance and representations of financial ability, all of which contained obvious seeds of controversy. More details of their arrangements are contained in *Troutman v. Erlandson,* 279 Or 595, 569 P2d 575 (1977); *Troutman v. Erlandson,* 287 Or 187, 598 P2d 1211 (1979).

In *In re Brown,* 277 Or 121, 559 P2d 884 (1977), we found the accused attorney guilty of violating DR 5-104(A) by entering into a partnership with his client. We stated in *Brown, supra,* at 128: "The very foundation of the arrangement, both as to the partnership and as to the corporation, left the accused and Jacobson with different and conflicting business interests." The same can be said of the partnership between Troutman and the accused. We find the accused guilty of violating DR 5-104(A).[1]

The Trial Board and Disciplinary Review Board first recommended that the disciplinary proceeding against the accused be changed into a proceeding pursuant to Section 5 of the Rules of Procedure of the Oregon State Bar. Section 5(2)(a) provides for a procedure whereby the bar petitions the court "to determine whether an active member is disabled from continuing to practice law because of a

---

[1] The Bar also charged the accused with publishing a libel which was the basis of a judgment against the accused for general and punitive damages. Another charge was that the accused was found by a court to have transferred assets in order to prevent creditors from reaching these assets. Because of our disposition of this matter we find it unnecessary to decide whether these charges are a basis for discipline.

The accused was also charged with unethical conduct in bringing lawsuits against attorneys and clients who obtained judgments against the accused. The complaint does not allege either ultimate facts or conclusory phrases which would inform the accused why the bringing of these lawsuits was unethical conduct. For this reason we will not consider this charge.

personality disorder; because of mental infirmity or illness [other causes are stated]; * * *." The Trial Board made its recommendation on the basis of its observation of the accused during the hearing and the evidence introduced at the hearing, including portions of the records of the numerous lawsuits in which the accused was a party and acting as his own attorney. The Disciplinary Review Board stated that its recommendation was based solely on the record.

As a result of the recommendations of the Trial Board and the Disciplinary Review Board, the bar petitioned this court pursuant to Section 5. Acting in accordance with Section 5, we had the accused examined by three physicians, two of whom were psychiatrists. Summaries of their respective opinions follow:

"In summation, I believe that Mr. Erlandson shows lack of insight into his problems, a lack of ability to relate in a satisfactory manner to every day events and also to legalistic problems. I believe his judgements are impaired because of his perceptions of reality, and I believe at this time, that the competency of Mr. Erlandson to practice law should be considered questionable."

"It is my clinical opinion that Mr. Erlandson presents clinical signs and symptoms of a psychiatric disorder best characterized as personality disorder. This disorder does create psychiatric impairment in the range of mild to moderate, depending on the degree of stress under which he may operate. * * *."

"* * * At the present time, it is my opinion that Mr. Erlandson's judgment is impaired and that his ability to make decisions both on behalf of clients and himself is impaired because of his personality disorder. * * *."

Section 5(2)(a) of the Rules of Procedure provides:

"* * * If, upon consideration of the reports of the designated experts or otherwise, the court concludes that probable cause exists that such member is disabled from continuing to practice law, the court may summarily order that such member appear before the court or its designate and show cause why such member should not be enrolled by the court as an inactive member until reinstated by the court. * * *"

We determined that the medical evidence was not sufficient for us to find probable cause that the accused was

disabled from continuing to practice law and we dismissed the Section 5 proceeding.

Although we are convinced that the mental condition of the accused played a part in causing his unethical conduct and that this condition continued at the time of oral argument of this cause, the question now before us is not whether the accused is disabled from practicing law. The question is, what discipline should be imposed on the accused because of the accused's unethical conduct.

The finding of fraud is a particularly serious matter. If it were not for the medical opinion that with treatment the accused has a good chance of curing his mental problems, we would consider more severe disciplinary measures. However, because the accused's mental problems contributed to his conduct and these problems are susceptible to cure, we suspend the accused from membership in the bar for one year and until such time as he has satisfactorily shown "* * * that he has the good moral character and general fitness required for admission to practice law in Oregon and that his resumption of the practice of law in this state will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive to the public interest. * * *" § 18 Rules of Procedure, July 1978.

In other cases in which a psychiatric condition was a cause of the lawyer's conduct, we placed the lawyer on probation. *In re Varnes,* 285 Or 463, 591 P2d 366 (1979); *In re Richard F. Christ,* 258 Or 88, 481 P2d 74 (1971); *In re C. E. Wheelock,* 249 Or 572, 439 P2d 872. In those cases, however, the unethical conduct was not as serious and the lawyer concerned was aware of his psychiatric problem and was under medical supervision.

The Oregon State Bar is awarded its actual and necessary costs and disbursements incurred in the proceeding.