Argued and submitted March 9, affirmed March 16, 1983

## FROHNMAYER et al
*Respondents on review,*

*v.*

## STATE ACCIDENT INSURANCE FUND CORPORATION,
*Petitioner on review.*

(CA A26256; SC 29272)

660 P2d 1061

Barnes H. Ellis, Portland, argued the cause for petitioner on review. With him on the briefs were Terrence R. Pancoast, Susan P. Graber, Stephen S. Walters, Charles F. Adams, Joyce A. Harpole, Laurel S. Terry, and Stoel, Rives, Boley, Fraser and Wyse, Portland.

William F. Gary, Solicitor General, Salem, argued the cause for respondents on review. With him on the brief were Dave Frohnmayer, Attorney General, and Stanton F. Long, Deputy Attorney General, Salem.

Before Lent, Chief Justice, and Peterson, Campbell, Roberts, Carson, and Jones, Justices.

PETERSON, J.

## PETERSON, J.

In 1982 the legislature met in a fourth special session on September 3, 1982, and adopted two acts, the effect of which was to order the transfer of $81 million from the State Accident Insurance Fund Corporation (SAIF Corporation) to the General Fund.[1]

On September 13, 1982, SAIF Corporation authorized counsel other than the Attorney General or the Department of Justice to file suit to determine the legality of Or Laws 1982 Special Session (September 3) ch 2-3 (HB 3324 and HB 3325). That claim, *SAIF Corporation, et al v. State of Oregon, et al,* is now pending in Marion County Circuit Court. The Attorney General responded by filing a motion in that case to require SAIF Corporation's counsel to establish their authority, ORS 9.350, and by filing this complaint for declaratory judgment raising the question whether SAIF Corporation, as an "independent public corporation," can employ outside counsel and institute legal proceedings without authorization of the Attorney General or Department of Justice. The trial court ruled in favor of the Attorney General in this declaratory judgment suit:

"The State Accident Insurance Fund Corporation and its Directors may not employ or be represented by any counsel or attorney at law, other than attorneys of the Department of Justice, except to the extent that such employment or representation of other counsel or attorney at law explicitly is authorized by the Attorney General."

On SAIF Corporation's appeal, the Court of Appeals affirmed, *Frohnmayer v. SAIF,* 61 Or App 147, 655 P2d 1098 (1982).

ORS 656.752(3) provides that SAIF Corporation "in its name may sue and be sued." This is the first case in which this court has considered whether SAIF Corporation or any state governmental entity can employ outside counsel without the authorization of the attorney general under the statutes now in effect. We allowed review to consider that question.

---

[1] As used herein, the term "SAIF" refers to the State Accident Insurance Fund, the predecessor of the State Accident Insurance Fund Corporation. The term "SAIF Corporation" refers to the State Accident Insurance Fund Corporation, SAIF's successor.

The Oregon workers' compensation system dates from 1913, when the Industrial Accident Fund (SIAC) was created. Or Laws 1913, ch 112, § 20. Until 1965, SIAC was the sole provider of workers' compensation insurance to Oregon employers. The 1965 legislative assembly abolished the state monopoly on workers' compensation and gave Oregon employers the option of qualifying as a "direct responsibility employer" by proof of "sufficient financial ability to be able to make certain the prompt payment of all compensation * * * and * * * assessments" by filing a workers' compensation insurance policy issued by a qualified insurer or depositing money, a surety bond or securities in an amount "sufficient to insure payment of compensation and assessments," but not less than $100,000; or insuring as· a "contributing employer" with the State Accident Insurance Fund, the successor to SIAC. Or Laws 1965, ch 285, §§ 5, 75. Since 1965, SAIF and SAIF Corporation have been Oregon's largest providers of workers' compensation insurance.

Before July 1, 1977, the Department of Justice performed all legal services for SAIF. In 1977, former Attorney General Redden authorized SAIF to retain its own general or special counsel to perform its legal work. This authorization, pursuant to ORS 180.235, arose because of a perceived conflict of interest in the Attorney General's representation of both SAIF and the Workers' Compensation Board, an adjudicative body before which SAIF regularly appeared. Former Attorney General Brown succeeded Redden and expressly authorized SAIF's continued use of private counsel.

In 1979, SAIF became SAIF Corporation, an independent public corporation. Shortly after Attorney General Frohnmayer took office in 1981, representatives of SAIF Corporation requested that he authorize SAIF Corporation to continue its use of private counsel. Attorney General Frohnmayer concluded that there was no need to change the arrangement that his predecessors had approved and he, too, authorized SAIF Corporation to employ its own legal counsel.

In September, 1982, the legislature approved and the Governor signed legislation which provides for the

transfer of $81 million from the Industrial Accident Fund to the General Fund.[2] SAIF Corporation opposed the transfer. Immediately before the special session of the legislature in which the transfer was approved, the Attorney General learned that SAIF Corporation officials had retained private counsel and were considering initiating legal proceedings to block the transfer. By letter dated September 1, 1982, the Attorney General notified SAIF Corporation

---

[2] The Industrial Accident Fund arises from ORS 656.632 and ORS 656.634, which provide:

ORS 656.632:

"(1) The Industrial Accident Fund is continued. This fund shall be held by the State Treasurer and by him deposited in such banks as are authorized to receive deposits of general funds of the state.

"(2) All moneys received by the State Accident Insurance Fund Corporation under this chapter, shall be paid forthwith to the State Treasurer and shall become a part of the Industrial Accident Fund. However, any assessments collected for the director under this chapter and deposited in the Industrial Accident Fund may thereafter be transferred to the director and deposited in the Administrative Fund.

"(3) All payments authorized to be made by the State Accident Insurance Fund Corporation by this chapter, including all salaries, clerk hire and all other expenses, shall be made from the Industrial Accident Fund."

ORS 656.634:

"(1) The Industrial Accident Fund is a trust fund exclusively for the uses and purposes declared in ORS 656.001 to 656.794, except that this provision shall not be deemed to amend or impair the force or effect of any law of this state specifically authorizing the investment of moneys from the fund.

"(2) The State of Oregon declares that it has no proprietary interest in the Industrial Accident Fund or in the contributions made to the fund by the state prior to June 4, 1929. The state disclaims any right to reclaim those contributions and waives any right of reclamation it may have had in that fund."

HB 3324 directs the State Treasurer to transfer $81 million from the Fund into the General Fund, through a program of liquidating investments. (§ 2(1).) The act contained an emergency clause, allowing it to become effective immediately. (§ 5.) The transfer is to be completed on June 30, 1983. (§ 2(2).) The act provides that the transfer may not be enjoined until it shall have been finally adjudicated to be invalid. (§ 2(3).)

HB 3325 assesses a one-time tax equal to 44.5 percent of accumulated, declared surplus against "each independent public corporation created by statute for the purpose of writing workers' compensation insurance." (§ 2(1).) SAIF Corporation is the only such entity. The tax would raise the same amount of money as the transfer directed by HB 3324. The act contains a proviso that this tax shall not take effect, and is not due and payable, unless and until enforcement of HB 3324 is enjoined or declared invalid in a final, binding, and enforceable judgment of a court of competent jurisdiction. (§ 2.)

that such contemplated action was beyond the scope of his prior authorization for the use of general and special counsel.

During and after the special session of the legislature, the Attorney General had numerous contacts with SAIF Corporation. He invited it to request private counsel, pursuant to ORS 180.235, for purposes of challenging the fund transfer. SAIF Corporation declined to do so, stating that ORS chapter 180 did not apply to it.

On September 13, 1982, SAIF Corporation's Board of Directors instructed its counsel to initiate legal proceedings challenging the $81 million transfer. On September 15, 1982, the same day this action was filed, the Attorney General notified SAIF Corporation that he was initiating legal proceedings to determine the scope of his authority under ORS chapter 180. The Attorney General authorized SAIF Corporation to retain private counsel to defend this suit and at the same time he revoked his general authorization for its employment of private counsel. Two days later, SAIF Corporation initiated a declaratory judgment proceeding against the State of Oregon, the State Treasurer, the Department of Revenue, and its director, claiming that HB 3324 and HB 3325 were invalid.

SAIF Corporation has never asked the Attorney General to authorize private counsel for the purpose of challenging the fund transfer. Mr. Frohnmayer testified that if such a request were received he would make a decision after seeking advice and counsel from the Department of Justice Ethics Committee, the Department of Justice Executive Committee, and, possibly, from outside counsel retained as a special Assistant Attorney General.

At all stages of this proceedings SAIF Corporation has made three contentions. We quote from its petition for review:

> "*First,* the Court of Appeals erred in holding that SAIF Corporation is among the entities required by ORS chapter 180 to use the services of the Attorney General. * * *.

> "*Second,* the Court of Appeals erred in holding that ORS chapter 180 applies to SAIF Corporation in circumstances where SAIF Corporation is acting in its capacity as

trustee of non-state funds, and the expressly asserted 'interest of the state' is adverse. * * *.

"*Third,* the Court of Appeals erred in affirming the trial court's judgment that ORS chapter 180 governs regardless of plaintiffs' clear conflicts of interest. * * *." (Emphasis in original.)

We will discuss each contention in turn.

## SAIF CORPORATION IS SUBJECT TO
## THE PROVISIONS OF ORS CHAPTER 180

ORS chapter 180 contains comprehensive statutes governing the duties and responsibilities of the Attorney General and the Department of Justice. ORS 180.060 describes in a general way the duties of the Attorney General. The powers, duties, and responsibilities of the Department of Justice and specified state entities, insofar as the state's legal affairs are concerned, are specifically defined in ORS 180.220 and 180.230.

ORS 180.220:

"(1) The Department of Justice shall have:

"(a) General control and supervision of all civil actions and legal proceedings in which the State of Oregon may be a party or may be interested.

"(b) Full charge and control of all the legal business of all departments, commissions and bureaus of the state, or of any office thereof, which requires the services of an attorney or counsel in order to protect the interests of the state.

"(2) No state officer, board, commission, or the head of a department or institution of the state shall employ or be represented by any other counsel or attorney at law.

"(3) This section is subject to ORS 767.875."

ORS 180.230:

"No compensation shall be allowed to any person for services as an attorney or counselor to any department of the state government or to the head thereof, or to any board or commission, except in cases specially authorized by law."

ORS 180.220 refers to seven state entities: departments, commissions, bureaus, offices thereof, state officers, boards, and heads of departments or institutions. Even

though ORS chapter 180 makes no specific reference to an "independent public corporation,"[3] we are convinced that SAIF Corporation is subject to its provisions.

ORS 180.220 descends from Oregon Laws 1947, chapter 556. Section 2 of that law provided:

> "The department of justice shall have general control and supervision of all civil actions and legal proceedings in which the state of Oregon may be a party or may be interested, and have full charge and control of all the legal business of all departments, commissions and bureaus of the state, or of any office thereof, which requires the services of an attorney or counsel in order to protect the interests of the state. No state officer, board, commission, or the head of a department or institution of the state shall employ or be represented by any other counsel or attorney at law."

As does ORS 180.220, that law referred to departments, commissions, bureaus, offices thereof, state officers, boards and heads of departments or institutions. The most likely conclusion is that those seven terms were not intended to be by way of limitation, but by way of description, to generally describe the activities of the entity "the State of Oregon." No exceptions were provided for.

■       The only specific statutory exception to the broad language now found in ORS 180.220(1) and (2) was enacted in 1967, Or Laws 1967, ch 178, § 3, and is found in ORS 180.220(3). It grants specific authority to the Public Utility Commissioner to employ a collection agency to collect fees, taxes and penalties due the state. The specific limitation of ORS 180.220(2), coupled with the exception contained in ORS 180.220(3), compels the conclusion that all of the state's legal affairs, whether included within the term "civil actions and legal proceedings" of ORS 180.220(1)(a) or within the term "legal business" of ORS 180.220(1)(b), remain under the charge, control and supervision of the

---

[3] Apparently SAIF Corporation is the only Oregon "independent public corporation," as that term is used in ORS 656.751. We find no other in our examination of the Oregon statutes. SAIF Corporation suggests that the Oregon State Bar, under ORS 9.010, and the Port of Portland, under ORS 778.010, are in the same category, but the texts of those statutes are different from ORS 656.751, and we have no occasion here to consider whether those corporations are subject to ORS chapter 180.

Department of Justice. If the legislature intended that SAIF Corporation was not subject to ORS chapter 180, it likely would have made specific exemption for it.

The 1979 legislative history reinforces this conclusion. The State Compensation Department (which later became SAIF) had been created in 1965 "for the purpose of transacting workers' compensation insurance business formerly transacted by the State Industrial Accident Commission." ORS 656.752(1), 1977 Replacement Part; *see* Or Laws 1965, ch 285, § 55. By passing Oregon Laws 1979, chapter 829, § 5, the legislature created a new entity, the State Accident Insurance Fund *Corporation,* an "independent public corporation," whose stated function and purpose was identical to that of the former SAIF—"for the purpose of transacting workers' compensation insurance business formerly transacted by the State Industrial Accident Commission."

The 1979 law made few changes in the method of operation. It provided for a board of directors "to establish the policies for the operation of [SAIF Corporation] consistent with all applicable provisions of law." Or Laws 1979, ch 829, § 2(7). The SAIF Corporation's manager, formerly appointed by the governor, was to be appointed by the board. *Id.* § 6. With one exception, which is discussed below, these are the only significant changes resulting from the 1979 legislation.[4]

---

[4] Mr. Gill, the SAIF manager, filed a statement with the House Labor Committee which read in part as follows:

"Senate Bill 255 is designed to lower the cost of workers' compensation in Oregon by improving the ability of the state's largest carrier - the State Accident Insurance Fund - to respond to the needs of its policyholders and their workers.

"This legislation recognizes that SAIF is not a state agency in the true sense, but a self-supporting, non-profit insurance fund operating within Oregon's competitive, three-way workers' compensation system. SAIF was created by the Legislature to provide the best workers' compensation protection at the lowest possible cost. Senate Bill 255 will further assist SAIF in meeting that obligation.

"This bill would establish SAIF as a public corporation under the direction of a five-member Board of Directors. The members of that Board would come from the ranks of SAIF policyholders or the employes of those policyholders. They would be appointed by the Governor and subject to confirmation by the Senate.

The legislative history is extremely vague as to why an "independent public corporation" was created. As originally proposed, SB 255 created a State Accident Insurance Fund *Commission.* Later the decision was made to create an independent public corporation. Minutes, Senate Committee on Labor, Consumer and Business Affairs, February 2, 1979, page 3.

It is clear that during the 1979 session, the legislature considered and made specific provision for exemption from Oregon statutes to which SAIF previously was subject. These exemptions are now found in ORS 656.753(1).[5] Had the legislature intended that SAIF Corporation not be subject to ORS chapter 180, it likely would have included

---

"Under the direction of this five-member Board, the State Accident Insurance Fund Corporation would continue to operate in a self-supporting, non-profit manner.

"Its employes would continue to be 'public' employes, although not 'state' employes as defined under the State Merit System Law.

"SAIF would continue to compete directly with private insurance carriers for a share of the market, but would be responsible for obtaining all support services presently provided it as a state agency.

"SAIF's operations would continue to be audited by the Secretary of State, as well as the Oregon Insurance Commissioner. In addition, an annual report of operations would be filed with the legislative assembly and the Governor. Finally, as a creature of statute, it would continue to be under the ultimate control of the Legislature.

"The major change would come with SAIF's ability to more quickly respond to the needs of injured workers and their employers in such critical cost control areas as industrial hygiene, safety consultation and claims management. To use those premiums paid by its policyholders more effectively as a means of lowering their overall compensation costs.

"In short — to be less bureaucratic and more responsive.

"* * * * *.

"The potential savings under this legislation are significant. The cost of workers' compensation in Oregon has risen to a point where — for an operation as large as SAIF's — even a claims cost reduction of one per cent means annual savings of nearly $2 million.

"It is estimated the passage of Senate Bill 255 would allow SAIF to reduce overall claim costs by as much as five per cent, an annual savings of nearly $10 million."

[5] ORS 656.753(1) as enacted, provides:

"(1) Except as otherwise provided by law, the provisions of ORS chapters 240, 276, 279, 282, 283, 291, 292 and 293 do not apply to the State Accident Insurance Fund Corporation."

chapter 180 with the other exemptions enumerated in ORS 656.753(1), for the opportunity was, without any doubt, present.

Such an exemption was proposed. Senate Bill 255 was amended by the Senate Committee on Labor Consumer and Business Affairs on February 8, 1979. Section 2 was amended to create the State Accident Insurance Fund Corporation. Section 4 was broadened, to exempt SAIF from all of the provisions of ORS chapters 240, 279, 282, 283, 291, 292, and 293. Section 6 of the amended bill added a new subsection (4) to ORS 656.754 which read:

> "(4) Notwithstanding the provisions of ORS chapter 180, the manager may employ attorneys to perform such legal services as may be required in the administration of the State Accident Insurance Fund Corporation." Senate Amendments to Senate Bill 255, February 8, 1979; *see* A-Engrossed Senate Bill 255 (1979).

On May 2, 1979, the committee further amended SB 255. The authorization to employ attorneys notwithstanding ORS chapter 180 was deleted. The section 4 exemptions from other provisions of law applicable to other state agencies remained. Senate Amendments to Senate Bill 255, May 2, 1979. *See* B-Engrossed Senate Bill 255 (1979). The deletion of authorization to employ attorneys appears to have been called to the attention of the members of the Senate by a staff memorandum analyzing B-Engrossed SB 255, as follows:

> "Effect of committee amendments
>
> "* * * * *.
>
> "Disallows the SAIF Corporation from employing its own attorneys." Staff Measure Analysis, Exhibit File, SB 255 (1979).

As finally enacted, the measure contained the section 4 exemptions mentioned, and did not contain any exemption from the provisions of ORS chapter 180. Enrolled Senate Bill 255 (1979).[6]

---

[6] The minutes of the Senate Committee on Labor, Consumer and Business Affairs, February 2, 1979, page 3, contains this entry, relative to the testimony of Jim Russell, assistant to the Governor:

■    This legislative history is significant. It rebuts SAIF Corporation's claim that the conversion of SAIF to an independent public corporation takes SAIF Corporation out from ORS chapter 180.[7] There is no whisper of evidence that the legislature intended otherwise.

■ ■    Although ORS 180.060(8) provides that "[t]he Attorney General shall not appear on behalf of any officer, department, agency, board or commission without its consent in any action, suit, matter, cause or proceeding in any court * * *," it is not inconsistent with our conclusion. The fact that ORS 180.060(8) prohibits the Attorney General from appearing on behalf of an entity of government without its consent does not by implication authorize the entity to employ its own counsel, nor is ORS 180.060(8) inconsistent with the prohibition contained in ORS 180.220(2). *See*

---

"* * * There were some additional items that the fund would be exempted from that are not included in the original draft of Senate Bill 255 such as certain fiscal chapters, the state merit system law, the public contract and purchasing laws, the printing laws, regulation by the Department of General Services, creating a situation with the Financial Administration Provisions of 291, which would not apply to SAIF and ORS 292 dealing with salaries and expenses of officers and employees. The market would establish these and they would be independent of these provisions. The amendments they are proposing in Exhibit 'A' would take care of these matters."

[7] Any lingering doubt (and we have none) is dispelled by virtue of events at the 1981 legislature.

In 1981, two years after the legislature changed SAIF's name and exempted it from certain provisions regulating the actions of state agencies, Senate Bill 128 (1981) was introduced at SAIF's request. Section 2 of that measure proposed an amendment of ORS 192.690 to exempt deliberations of the directors of SAIF from the requirements of the Public Meetings Law, and section 19 again proposed amendment of ORS 656.754 by adding a new subsection (4):

"(4) Notwithstanding the provisions of ORS chapter 180, the manager may employ attorneys to perform such legal services as may be required by the State Accident Insurance Fund Corporation."

SAIF Corporation's manager testified that the amendment was "necessary to continue the authorization of the agency to hire independent counsel." Attorney General Frohnmayer testified against the provision, stating that SAIF "should remain part of the legal services delivery system provided in Chapter 180."

Senate Bill 128 was enacted as Oregon Laws 1981, chapter 876, but neither the exemption from the Public Meetings Law nor from the requirements of ORS chapter 180 survived the legislative process. Introduction in 1981 of SB 128, with exemptions from ORS chapter 180 and the Public Meetings Law, and its passage as Oregon Laws 1981, chapter 876 without those exemptions, is further evidence that the legislature considered SAIF Corporation to be subject to those provisions and intended it to remain so.

*also* ORS 180.060(5), which provides that "[t]he Attorney General shall, when requested, perform all legal services for the state or any department or officer of the state."

Our conclusion is supported by the decision of this court in *Gibson v. Kay,* 68 Or 589, 137 P 864 (1914). In *Gibson,* the Corporation Commissioner hired an attorney, Claude McColloch, as a special assistant. After McColloch performed the services, the State Treasurer refused to pay a warrant issued by the Secretary of State in payment for the services performed. In an original mandamus proceeding in this court, we upheld the State Treasurer, saying:

> "* * * So far as they concern litigation for the state, or in which the state is interested, the duties for which the claimant was appointed were germane to and might well be performed by either the attorney general or the district attorneys; and, the state having provided such officers charged with such duties, the corporation commissioner could not substitute an appointee of his own to perform those duties. * * * He cannot supersede the regular law officers of the state. The terms 'clerks, stenographers, and assistants' [which the commissioner could appoint] are not comprehensive enough to include attorneys, or to work a repeal or amendment by implication of the laws providing legal advisers for the state and in its interest." 68 Or at 594-96.

SAIF Corporation is subject to the provisions of ORS chapter 180. We turn, then, to SAIF Corporation's second claim.

## SAIF CORPORATION'S STATUS DOES NOT MAKE ORS CHAPTER 180 INAPPLICABLE

■ SAIF Corporation's second contention is that because it acts as "a public trustee of non-state moneys," it may be represented by independent counsel of its choice. We disagree. Even though ORS 656.634(1) describes the Industrial Accident Fund as a "trust fund" and even though ORS 656.634(2) "declares that [the State of Oregon] has no proprietary interest in the Industrial Accident Fund * * *," the operation of the fund remains a part of the "legal business * * * of the state," ORS 180.220(1)(b).

SAIF Corporation is the largest writer of workers' compensation insurance in Oregon, and its activities touch more employees and employers than any workers' compensation insurance company. We are not persuaded that ORS

chapter 180 is inapplicable because SAIF Corporation's activities are funded by the Industrial Accident Fund or because SAIF Corporation, in bringing its suit to test the 1982 legislation, seeks to protect the fund from unlawful expropriation. At bottom, *this case* [8] involves but one issue—the right of SAIF Corporation to employ independent counsel without the authorization of the Attorney General. SAIF Corporation's status with relation to the trust fund is not relevant to that issue.

## THE ATTORNEY GENERAL'S CONFLICT OF INTEREST, IF ANY, IS NOT RELEVANT TO THE OUTCOME OF THE CASE BEFORE US

■       SAIF Corporation's final contention is that the Attorney General and the Department of Justice "have a conflict which requires that SAIF Corporation be permitted to retain other counsel, even if SAIF Corporation is generally subject to ORS Chapter 180." The legislature has anticipated this type of situation. ORS 180.235 specifically concerns conflicts of interest of the Attorney General, and provides:

"(1)   Notwithstanding any provision of law to the contrary, whenever the Attorney General concludes that it is inappropriate and contrary to the public interest for his office to concurrently represent more than one public officer or agency in a particular matter or class of matters in circumstances which would create or tend to create a conflict of interest on his part, he may authorize one or both of such officers or agencies to employ its own general or special counsel in the particular matter or class of matters and in related matters. Such authorization may be terminated by the Attorney General whenever he determines that separate representation is no longer appropriate.

"(2)   Any counsel so employed shall be a member of the Oregon State Bar and shall be paid a salary or other compensation out of the funds appropriated to such officer or agency.

"(3)   In any matter in which the Attorney General has authorized employment of such counsel, any references to representation of such officer or agency by the Attorney

---

[8] The validity of SAIF Corporation's claim in the other case that the two special session laws are invalid is not before us.

General contained in any provision of law shall be deemed to refer to such counsel."

The trial court did not reach this issue because it believed that it had no authority to consider questions of legal ethics under *Brown v. Oregon State Bar,* 293 Or 446, 648 P2d 1289 (1982).[9] The Court of Appeals resolved this issue in one paragraph, saying:

"Finally, defendant argues that the ORS chapter 180 provisions do not apply here, because plaintiffs have a conflict of interest in connection with defendant's challenge to the 1982 acts. ORS 180.235(1) provides that the Attorney General may authorize the employment of independent counsel if he determines that he has a conflict of interest. Defendant has not requested the Attorney General to determine whether he has a conflict of interest respecting the underlying litigation." 61 Or App at 150-51.

SAIF Corporation points to this evidence in support of its claim that the Attorney General has a conflict of interest.

"- plaintiffs drafted HB 3324 and HB 3325

"- plaintiff Frohnmayer publicly expressed his opinion that those bills are valid despite objections from representatives of SAIF Corporation

"- plaintiff Frohnmayer testified before the legislature that these bills were constitutionally defensible

"- plaintiffs represent the adverse parties in *SAIF Corporation, et al. v. State of Oregon, et al.,* including the Department of Revenue and its Director, who are charged with collection of the 'tax' levied by HB 3325

"- plaintiffs have identified their 'clients' in this matter as the Executive Department and, perhaps, the Legislative Assembly; and

"- plaintiffs are providing staff support to a special investigator appointed by the Governor to review allegations of misconduct by SAIF Corporation's Board of Directors."

---

[9] The term "conflict of interest," as used in ORS 180.235, does not necessarily have the same meaning as does the term in a legal ethics context. Under some circumstances its meaning may be broader than its legal ethics counterpart. Under other circumstances, its meaning may not be. We need not decide the meaning of that term in this case. *See In re Kinsey,* 294 Or 544, 577, 660 P2d 660 (1983); ORS 244.020(4).

On September 15, the Attorney General wrote SAIF Corporation that he was filing this suit. In his letter he stated:

"The private attorneys SAIF has retained have suggested that a conflict of interest requires that I authorize counsel pursuant to ORS 180.235, but that if I do not, they will proceed in any event because the Attorney General's authority is not necessary. Mr. Gill [SAIF Corporation's manager], SAIF cannot have the matter both ways. Either the Attorney General's authorization is necessary or it is not. Repeated requests to SAIF and its representatives by this office for a statement of its precise legal position have not produced any results.

"Vague contentions of unspecified illegality cannot form the basis of a decision that the public interest requires me on behalf of the Department of Justice to authorize an exception to the provisions of chapter 180. It would be irresponsible of me to act without the necessary information. Moreoever, the simple assertion that an unspecified conflict exists does not meet or respond to the statutory procedures or requirements. In fact, it undermines any orderly process for determining the legal position of the State of Oregon. If public bodies can 'create' a conflict by their own interpretation of state law and their preemptive acts in retaining private counsel, all of the legislative purposes of ORS chapter 180 would be forever frustrated."

ORS 180.235(1) does not expressly require an agency to seek Attorney General authorization before employing outside counsel. There is, however, an important condition precedent in the statute. Before an agency "can employ its own general or special counsel in the particular matter or class of matters and in related manners," the Attorney General must "[conclude] that it is inappropriate and contrary to the public interest for his office to concurrently represent more than one public officer or agency in a particular matter or class of matters in circumstances which would create or tend to create a conflict of interest on his part." This determination has not been made.

SAIF Corporation has steadfastly refused to request authorization of special counsel, apparently because it believes that ORS chapter 180 is inapplicable to it. Similarly, the Attorney General has steadfastly refused to

grant authorization because (using his words) "vague contentions of unspecified illegality cannot form the basis of a decision that the public interest requires [him] * * * to authorize an exception to the provisions of chapter 180."

We are asked to make a decision in an Alphonse/Gaston context. Even though we might believe that a "conflict of interest" (as that term is used in ORS 180.235(1)) has been made out, putting the Attorney General to a choice on a confrontational basis by first hiring outside counsel without authorization is not the appropriate procedure to be followed. Normally, successfully to claim that a public official has failed to perform an official duty, there must be a showing that a demand was made that the duty be performed and the official refused to perform, or a showing that the official duty should have been, but was not, performed. On the record before us, we cannot say that the provisions of ORS 180.235 have been invoked, much less violated.

SAIF Corporation cites cases from other jurisdictions for the common law proposition that "there is an implied exception to statutes providing for exclusive representation by a public attorney when that attorney has a conflict of interest." That may be. We see no need, however, to recognize an implied exception to statutes providing for exclusive representation when there exists an express statutory exception to the exclusive representation statute.

We have carefully studied SAIF Corporation's claims on this point because of the importance of the question and because of the facts quoted earlier in this section of the opinion. It is apparent that SAIF Corporation's claim rests upon a false premise—that it is not subject to ORS chapter 180. We reject its efforts to sidestep ORS 180.235 by invoking a common law exception which is not applicable to this case.

The law does not require the performance of a useless act. However, on this record, we are not convinced that a request by SAIF Corporation for authorization to employ separate counsel would have been, or would be, futile.

In short, we believe that ORS 180.220, 180.230, and 180.235 are a carefully considered set of statutes

designed to create a procedure for governmental entities to follow if an entity wants to take a legal position and the entity believes that the Attorney General has a conflict. ORS 180.220(2) prohibits the entity from employing outside counsel. ORS 180.235(1) provides an avenue for the agency to obtain authorization to employ outside counsel. The legislative intent is clear—authorization must be requested before outside counsel can be employed. We are not deciding whether under ORS 180.235(1), an agency has the right to *compel* the Attorney General to authorize the employment of separate counsel if a conflict exists.[10] What we have decided in this section of the opinion is that the agency must invoke ORS 180.235(1) by requesting authorization to employ separate counsel. Not having done so, upon this record we decline to decide whether ORS 180.235(1) requires the Attorney General to authorize the employment of separate counsel.

We therefore affirm the trial court and the Court of Appeals.

---

[10] The answer to that question may involve the meaning of the words "* * * he *may* authorize * * *" of ORS 180.235(1). (Emphasis ours.) *See* ORS 34.110-.240.