In Re: Complaint as to the Conduct of

## CARLOS E. BOYER,
*Accused.*

(OSB 81-45, SC 29565)

669 P2d 326

Harry F. Elliott, Hillsboro, argued the cause and filed a brief for the Accused.

Bernt A. Hansen, McMinnville, argued the cause and filed a brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

The only real issue in this matter is the nature of the sanction which should be imposed for the accused's unethical conduct with respect to his failure to exercise independent professional judgment on behalf of certain of his clients.

The Oregon State Bar's complaint contained two causes. In the first the accused is charged with violation of DR 5-101(A), which provides:

> "(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

In both causes the complaint charges violations of DR 5-105, which generally governs whether a lawyer should refuse to accept or continue employment if the interest of another client may impair the independent professional judgment of the lawyer.

We take the facts from those which are conceded by the accused to be true and from our resolution of conflicts in the evidence where those exist. The only important conflicts in the evidence arise from the accused's testimony to the Trial Board that he made disclosures to the clients of their respective conflicts of interest with each other and with him and that he had acted as a mere scrivener in the matters rather than as an attorney of either client. Both the Trial Board and Disciplinary Review Board found the accused not to be a credible witness. We agree.

A major part of the accused's practice had been in real estate and contract law. He was fully conversant with various ways of financing purchases and development of real property at the time of the events with which we are here concerned.

The accused began representing Theone Ott in early 1978, primarily with respect to the conservatorship of the client's mother. He rendered both financial and legal advice and services. He became familiar with the financial resources of both the client and her mother.

In February of 1979 the accused began to act as lawyer for one Gillespie concerning formation of a corporation and

Gillespie's purchase of some real property, which Gillespie planned to develop. To do so Gillespie needed to borrow $25,000 and advised the accused that he was willing to pay interest at the annual rate of 25 to 30 percent. The accused told Gillespie that was too high a rate.

The accused called Ott to see if she wanted to make a loan of $25,000 at a profitable rate of return on the investment. After some discussions with each of his clients, Ott and Gillespie, the accused transmitted to Ott Gillespie's offer of a note having a stated principal amount greater than that to be loaned and bearing interest at a lesser rate than Gillespie had indicated he was willing to pay.

The accused was aware but did not advise either client that such a loan might be usurious and thus not enforceable. *Cf. In re Montgomery,* 292 Or 796, 802, 643 P2d 338 (1982).

Ott agreed to loan Gillespie $25,000. The loan was to be evidenced by a note for the principal amount of $26,190, with interest at the rate of 10% per annum, both principal and interest to be paid in 180 days. In May of 1979 the accused prepared such a note and a second mortgage on the real property to secure the note. Ott delivered the money to the accused, who then transferred the money to Gillespie. Gillespie paid the accused $500 out of that money as a finder's fee. Ott was not told that the accused was to receive or did receive a finder's fee.

Neither Gillespie nor Ott were represented by other lawyers during the negotiation and completion of this transaction. They had no direct contact with each other.

The accused did not advise either client of any possible conflict of interest inherent in this transaction and did not suggest that either of them seek independent legal advice. Each of the clients were relying upon the accused to protect their respective interests.

The accused continued to represent each of these clients in various matters.

In September of 1979 the accused wrote to Gillespie, inquiring whether he would be able to pay the note when it came due. He wrote: "I would appreciate your advice as to whether or not *we* [emphasis added] are going to have to negotiate for additional length of time."

The note was due in November. Both Ott and Gillespie were under the impression that it had been either renewed or extended, but the accused prepared no documentation of that and did not advise his clients of the need for such documentation.

Gillespie never paid the note, nor did he repay the loan in any way. He eventually discharged the debt in bankruptcy.

Meanwhile, in May of 1980 another lienholder commenced foreclosure proceedings on the real property. In July of 1980 the accused discussed the foreclosure proceeding with Ott and told her that he could not represent her because he had a conflict of interest. He referred her to another lawyer.

The value of the property was not sufficient for Ott to protect herself from the loss of her funds.

The accused had a financial and business interest in the negotiation of the loan transaction in his expectation of a finder's fee and of his continued representation of Gillespie in connection with the development of the property. He made no disclosure, let alone full disclosure, to Ott of his interest. With respect to his representation of Ott in this matter he clearly violated DR 5-101(A).

The accused also violated DR 5-105(B), which provides:

> "A lawyer shall not continue employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C)."

DR 5-105(C) provides:

> "In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation in the exercise of his independent professional judgment on behalf of each."

The accused's exercise of his professional judgment was not only likely to be affected, but was affected, adversely by his

representation of these two clients, and the exception prescribed by DR 5-105(C) was not met.

As noted at the outset, the true issue is the nature of the sanction to be imposed for this unethical and unprofessional conduct. Disciplinary proceedings involving violations of the Disciplinary Rules relating to conflict of interests are too numerous. The following list so indicates.

1977:  *In re Brown,* 277 Or 121, 559 P2d 884, 277 Or 731, 561 P2d 1030, 30 days suspension.

1978:  *In re Hendricks,* 282 Or 763, 580 P2d 188, 60 days suspension.
*In re Banks,* 283 Or 459, 584 P2d 284, public reprimand.
*In re Bartlett,* 283 Or 487, 584 P2d 296, 6 months suspension.
*In re Porter,* 283 Or 517, 584 P2d 744, public reprimand.

1979:  *In re Mumford,* 285 Or 559, 591 P2d 1377, public reprimand.

1980:  *In re Brownstein,* 288 Or 83, 602 P2d 655, public reprimand.
*In re Hershberger,* 288 Or 559, 606 P2d 623, public reprimand.
*In re Galton,* 289 Or 565, 615 P2d 317, public reprimand.
*In re Scannell,* 289 Or 699, 617 P2d 256, 60 days suspension.
*In re Holmes,* 290 Or 173, 619 P2d 1284, public reprimand.

1981:  *In re Erlandson,* 290 Or 465, 622 P2d 727, 1 year suspension.
*In re Robertson,* 290 Or 639, 624 P2d 603, 30 days suspension.
*In re Smith,* 292 Or 84, 636 P2d 923, 60 days suspension.

1982:  *In re Drake,* 292 Or 704, 642 P2d 296, 3 years suspension.
*In re Montgomery,* 292 Or 796, 643 P2d 338, public reprimand.

*In re Gant,* 293 Or 130, 645 P2d 23, 30 days suspension.
*In re Robeson,* 293 Or 610, 652 P2d 336, disbarment.

1983: *In re Kinsey,* 294 Or 544, 660 P2d 660, public reprimand.
*In re Scott,* 294 Or 570, 660 P2d 1061, public reprimand.
*In re Jans,* 295 Or 289, 666 P2d 830, 30 days suspension.

The list is probably not complete. A quick search reveals those cases. The disparity in sanctions imposed is accounted for by the particular circumstances of each matter.

■ We have noted that a lawyer's want of credibility as a witness before the Trial Board is a proper circumstance for consideration in fixing the sanction for unethical conduct. *In re Drake,* 292 Or at 717. That circumstance obtains here.

The Trial Board recommended suspension for a period of seven months and that the accused be required to pass a legal ethics examination before being reinstated. The Disciplinary Review Board endorsed that recommendation. The Oregon State Bar in its brief in this court argues that were it not for the accused's previously unblemished record, permanent disbarment would be indicated, but that the period of suspension should be at least three years.

■ Since the purpose of sanctions is to protect the public, and the punishment of the lawyer only incidental thereto, we believe seven months suspension to be adequate in all of the circumstances here presented. We note, however, that this particular type of unethical conduct appears to be on the rise. Deterrence thereof for the public good may be accomplished by more severe penalties for this kind of unprofessional conduct which may occur after the date this opinion is published.

The accused shall be suspended for a period of seven months beginning with the effective date of this decision. *See* Oregon Rules of Appellate Procedure, 11.03(4). The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.535(4).