Argued and submitted September 8, 2020, reversed and remanded September 9, 2021, petition for review allowed January 20, 2022 (369 Or 209)
See later issue Oregon Reports

Gregory A. CHAIMOV,
*Plaintiff-Respondent,*

*v.*

STATE OF OREGON,
by and through the
Oregon Department of Administrative Services,
*Defendant-Appellant.*

Marion County Circuit Court
18CV39159; A169203

498 P3d 830

In this declaratory judgment action, the narrow question presented is whether state agencies that have submitted bill-drafting requests to the Office of Legislative Counsel (LC) are "clients" of LC for purposes of the lawyer-client privilege, OEC 503 (codified at ORS 40.225), such that communications between the agencies and LC before and during the drafting process are exempt from disclosure under ORS 192.355(9) of the Public Records Law. The state appeals a judgment for plaintiff on the parties' cross-motions for summary judgment. The judgment declared that bill-drafting requests by agencies to LC are not protected from disclosure by the lawyer-client privilege and directed the Department of Administrative Services (DAS) to turn the documents over to plaintiff. The state contends that the trial court erred in granting plaintiff's motion and denying the state's motion. *Held*: The state is correct that confidential communications between state agencies and LC preliminary to bill-drafting requests and during the bill drafting process are subject to the lawyer-client privilege as defined in OEC 503 and are therefore exempt from disclosure under the Public Records Law. The trial court therefore erred in granting plaintiff's motion for summary judgment and denying the state's motion.

Reversed and remanded.

Audrey J. Broyles, Judge.

Jona J. Maukonen, Assistant Attorney General, argued the cause for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

John DiLorenzo, Jr., argued the cause for respondent. Also on the brief were Duane Bosworth, Christopher Swift, Evan R. Christopher, and Davis Wright Tremaine LLP.

Jack L. Orchard, Adele J. Ridenour, and Ball Janik LLP filed the brief *amicus curiae* for Oregon Newspaper Publishers Association.

Before Armstrong, Presiding Judge, and James, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Reversed and remanded.

## ARMSTRONG, P. J.

In this declaratory judgment action, the narrow question presented is whether state agencies that have submitted bill-drafting requests to the Office of Legislative Counsel (LC) are "clients" of LC for purposes of the lawyer-client privilege, OEC 503 (codified at ORS 40.225),[1] such that communications between the agencies and LC before and during the drafting process are exempt from disclosure under ORS 192.355(9) of the Public Records Law. The state appeals a judgment for plaintiff on the parties' cross-motions for summary judgment. The judgment declared that bill-drafting requests by agencies to LC are not protected from disclosure by the lawyer-client privilege and directed the Department of Administrative Services (DAS) to turn the documents over to plaintiff. The state contends that the trial court erred in granting plaintiff's motion and denying the state's motion.

---

[1] OEC 503 provides:

"(1) As used in this section, unless the context requires otherwise:

"(a) 'Client' means:

"(A) A person, public officer, corporation, association or other organization or entity, either public or private, *who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer.*

"* * * * *

"(b) 'Confidential communication' means a communication not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

"(c) 'Lawyer' means a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation.

"* * * * *

"(2) A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services[.]

"* * * * *

"(7) Notwithstanding ORS 40.280, a privilege is maintained under this section for a communication ordered to be disclosed under ORS 192.311 to 192.478."

(Emphasis added.) We note that ORS 40.280 (OEC 511) provides for waiver of privileges by voluntary disclosure and states that "[v]oluntary disclosure does not occur when a public body, as defined in ORS 192.311, discloses information or records in response to a written request for public records made under ORS 192.311 to 192.478."

In reviewing a trial court's ruling on summary judgment, we apply the ordinary summary judgment standard under ORCP 47. A party is entitled to summary judgment when "there is no genuine issue as to any material fact and *** the moving party is entitled to prevail as a matter of law." ORCP 47. The facts in this case are undisputed, and the only question is whether the limited communications between agencies and LC before and during the legislative-drafting process are subject to the lawyer-client privilege provided in OEC 503 and are therefore exempt from disclosure under the Public Records Law.

We conclude that LC's services to agencies in the drafting of legislation are legal services to a "client" within the meaning of OEC 503. Thus, we conclude that the communication from agencies to LC requesting bill drafts are protected communications exempt from disclosure under the Public Records Law, and that the trial court therefore erred in granting plaintiff's motion for summary judgment and denying the state's motion. We therefore reverse the judgment for plaintiff and remand for entry of a judgment declaring that the bill request forms are subject to the lawyer-client privilege and exempt from disclosure under the Public Records Law.

Under ORS 171.130(2),[2] the Governor "may file a proposed legislative measure with the Legislative Counsel." LC, in turn, provides legislative-drafting services to the Governor and to state agencies: "Upon the written request of a state agency, the Legislative Counsel may prepare or assist in the preparation of legislative measures that have

---

[2] ORS 171.130(2) provides:

"On or before December 15 of an even-numbered year, or at any time in advance of a special session as may be fixed by joint rules of both houses of the Legislative Assembly, the following may file a proposed legislative measure with the Legislative Counsel:

"(a) The Oregon Department of Administrative Services, to implement the fiscal recommendations of the Governor contained in the Governor's budget.

"(b) The person who will serve as Governor during the session.

"(c) The Secretary of State, the State Treasurer, the Attorney General and the Commissioner of the Bureau of Labor and Industries.

"(d) The Judicial Department."

been approved for preparation in writing by the Governor or the Governor's designated representative." ORS 173.130(2).[3]

Only LC may draft proposed legislation. *See* Rules of the Oregon Senate, 213.07 ("The Executive Department, administrative agencies, boards and commissions, and the Judicial Branch, shall have all measures for presession filing with the Senate drafted by Legislative Counsel."); Rules of the Oregon House 2017-2018, 12.20(1) (legislative counsel must draft language for all measures introduced in the House).

---

[3] ORS 173.130 provides:

"(1) The Legislative Counsel shall prepare or assist in the preparation of legislative measures when requested to do so by a member or committee of the Legislative Assembly.

"(2) Upon the written request of a state agency, the Legislative Counsel may prepare or assist in the preparation of legislative measures that have been approved for preparation in writing by the Governor or the Governor's designated representative. The Legislative Counsel may also prepare or assist in the preparation of legislative measures that are requested in writing by the Judicial Department, the Governor, the Secretary of State, the State Treasurer, the Attorney General or the Commissioner of the Bureau of Labor and Industries. In accordance with ORS 283.110, the Legislative Counsel may charge the agency or officer for the services performed.

"(3) The Legislative Counsel shall give such consideration to and service concerning any measure or other legislative matter before the Legislative Assembly as is requested by the House of Representatives, the Senate or any committee of the Legislative Assembly that has the measure or other matter under consideration.

"(4) The Legislative Counsel, pursuant to the policies and directions of the Legislative Counsel Committee and in conformity with any applicable rules of the House of Representatives or Senate, shall perform or cause to be performed research service requested by any member or committee of the Legislative Assembly in connection with the performance of legislative functions. Research assignments made by joint or concurrent resolution of the Legislative Assembly shall be given priority over other research requests received by the Legislative Counsel. The research service to be performed includes the administrative services incident to the accomplishment of the research requests or assignments.

"(5) The Legislative Counsel shall give an opinion in writing upon any question of law in which the Legislative Assembly or any member or committee of the Legislative Assembly may have an interest when the Legislative Assembly or any member or committee of the Legislative Assembly requests the opinion. Except as provided in subsection (2) of this section and ORS 173.135, the Legislative Counsel shall not give opinions or provide other legal services to persons or agencies other than the Legislative Assembly and members and committees of the Legislative Assembly.

"(6) The Legislative Counsel may enter into contracts to carry out the functions of the Legislative Counsel."

LC must keep confidential "the contents or nature of any matter before the Legislative Counsel in the official capacity of the Legislative Counsel" that is designated as confidential by the person bringing the matter to LC. ORS 173.230 provides:

"(1)   The Legislative Counsel or any employee of the Legislative Counsel Committee may not reveal to any person not an employee of the committee the contents or nature of any matter before the Legislative Counsel in the official capacity of the Legislative Counsel, if the person bringing the matter before the Legislative Counsel or employee designates the matter as confidential. Matters not designated as confidential may be revealed only as prescribed by the rules of the committee.

"(2)   Notwithstanding subsection (1) of this section, the Legislative Counsel may provide a copy of a draft measure to the Legislative Fiscal Officer and the Legislative Revenue Officer.

"(3)   The provision by the Legislative Counsel of a copy of a draft measure under subsection (2) of this section is not a waiver of privilege under ORS 40.225."

In anticipation of the 2019 legislative session, the Governor asked state agencies in 2018 to identify problems or issues that they sought to resolve through the adoption of legislation and to propose ways of changing the law to address them. DAS required agencies to submit their proposals on a form entitled "2019 Agency Request to Office of Legislative Counsel for Drafting of Legislation" (the request form). DAS informed state agencies that legislative concepts

"will be temporally exempt from disclosure [under the Public Records Law] until Legislative Counsel has submitted bill drafts to the Governor's Office for final approval (this should be done by November 30, 2018)."

The "header" on the request form stated, "Confidential and Attorney-Client Privileged." An italicized paragraph on the form stated:

"This document is a request for legal services. By completing this form, the named agency asks the Office of Legislative Counsel to draft legislation for introduction in the 2019 Legislative Session based on the instructions

below. Although it is expected that agencies will have discussed legislative concept ideas with stakeholders, agencies are directed to treat this document as confidential and privileged and, accordingly, not to share the text of this form outside of state government before legislation is drafted and finalized."

Pursuant to those instructions, agencies created and submitted to the Governor's office request forms describing proposed legislative concepts. The request forms included the agencies' description of the "problem," the "proposed solution," and a proposed drafted legislative change. The forms asked whether the concept had previously been introduced, whether it required an amendment of current law, and whether the proposal was related to a legal decision. The forms also asked the agencies to include an "equity analysis" and information concerning known stakeholders, known opposition or support, and any fiscal impact.

In 2018, the Governor approved 234 concepts for development, and DAS forwarded the request forms to LC for drafting as proposed legislation for the 2019 Legislative Assembly. ORS 173.230(1) requires LC to keep any matter before it confidential if the requester designates it as confidential; LC understood the request forms to be confidential and treated them that way.

Plaintiff is an attorney with the firm of Davis Wright Tremaine LLP who practices law in the area of government relations. In July 2018, plaintiff submitted a public records request to the Governor's office for the 2018 request forms. DAS, the custodian of the records, denied the request, explaining that the records "are exempt from disclosure under ORS 192.355(1) based on attorney-client privilege."

As permitted by ORS 192.411, plaintiff filed a petition with the Attorney General, seeking an order requiring DAS to produce copies of the request forms. Deputy Attorney General Frederick Boss issued an order denying the request on behalf of the Attorney General, explaining the Attorney General's opinion that the request forms were subject to lawyer-client privilege, as defined in OEC 503 (codified at ORS 40.225):

"ORS 192.355(9)(a) expressly exempts from disclosure '[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law.' The lawyer-client privilege provides that '[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client.' ORS 40.225(2). Accordingly, ORS 192.355(9)(a) permits public bodies to decline to disclose public records that are protected by the lawyer-client privilege. *See, e.g.*, *Port of Portland v. Ore. Center for Environ. Health*, 238 Or App 404, 409[, 243 P3d 102] (2011) (predecessor statute to ORS 192.355(9)(a) encompasses lawyer-client privileged communications); *Klamath County School Dist. v. Teamey*, 207 Or App 250, 259[, 140 P3d 1152, *rev den*, 342 Or 46] (2006) (same).

"The Oregon Supreme Court has held that application of the lawyer-client privilege is contingent upon three findings. *See State ex rel OHSU v. Haas*, 325 Or 492, 501[, 942 P2d 261] (1997). First, the communication must be 'confidential' within the meaning of ORS 40.225(1)(b) (a communication 'not intended to be disclosed to third persons' other than to those necessary to facilitate the rendition of professional legal services). Second, the communication must have been made for the purpose of facilitating the rendition of professional legal services. And third, the communication must have been between the parties described in one of the paragraphs of ORS 40.225(2)(a)-(e). *Id*. If all three elements are satisfied, the lawyer-client privilege applies. *Teamey*, 207 Or App at 261-62. If an entire communication is deemed confidential, a public body is not required to separate exempt from nonexempt material under ORS 192.338. *See Port of Portland*, 238 Or App at 413."

Boss then explained that the request forms satisfied each of the three criteria for lawyer-client privileged communications as defined in OEC 503 (codified at ORS 40.225): (1) DAS intended and expressed the intention that the request forms be kept confidential, at least until LC had submitted a draft to the Governor for final approval; (2) the legislative drafting undertaken by LC constitutes a legal service, and the request form "facilitates these legal services by informing LC what is desired"; *Port of Portland*, 238

Or App at 411 (recognizing that a communication is made for the purpose of facilitating the rendition of legal services "if it makes it easier for an entity to make use of legal advice or services" (citing *Haas*, 325 Or at 502)); and (3) the request form constituted a communication between LC, as the lawyer, and DAS, as the client, within the meaning of OEC 503.

The Attorney General's order included a paragraph explaining the narrow scope of the claimed privilege. Although the request forms themselves were privileged communications because they were provided "to facilitate professional legal services," Boss reasoned that the substantive contents of the forms were likely available in a nonprivileged context:

"In adopting this interpretation, we are not suggesting that the privilege generally protects all communications within an agency regarding subjects about which an agency may want legal advice. A discussion about whether to pursue a particular legislative change, or what that legislative change might look like, is not inherently a conversation to facilitate professional legal services. Nor is the fact that an agency has decided to pursue a legislative change inherently privileged. That is true even though actually pursuing the legislative change may require legal services pursuant to ORS 173.130(2) and (5). The fact that legal services may be necessary or desirable to implement a decision does not mean that discussions about the decision are necessarily discussions to facilitate legal services. As a result, information about the contents of the legislative concept forms may exist in non-privileged communications. Indeed, the general subjects of all of the forms could well be available from non-privileged sources. *But our decision deals specifically with a form expressly intended to communicate, to an attorney, confidential information that will facilitate the attorney's rendition of legal services.* Ultimately, we do not need to resolve any broader question about the confidentiality of proposed legislative concepts, and this decision should not be interpreted as doing so."

(Emphasis added.)

Thus, as explained by Boss on behalf of the Attorney General, the privilege claimed with respect to the request forms was not for their substantive content. Rather, the

claimed privilege related to the communication—the form itself and its transmittal to LC, to facilitate LC's drafting services for the particular bill requests.

As allowed by ORS 192.411(2), plaintiff then filed this declaratory judgment action, seeking an order to require production of the request forms. The parties filed cross-motions for summary judgment.

In its motion for summary judgment, the state noted that the Public Records Law, ORS 192.355(9)(a), provides an exemption from disclosure for "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law." The state asserted that the lawyer-client privilege set forth in OEC 503 is such a privilege and that the confidential communications between agencies of the Executive Branch and the lawyers of the office of LC in furtherance of bill drafting were subject to that privilege.

In his motion for summary judgment, plaintiff focused on the *attorney-client relationship*. Plaintiff asserted, in essence, that the Legislative Assembly has an exclusive attorney-client relationship with LC, that agencies have an exclusive attorney-client relationship with the Attorney General, *see* ORS 183.220,[4] *Frohnmayer v. SAIF*, 294 Or 570, 577-78, 660 P2d 1061 (1983) (so holding), and that LC's drafting services for agencies cannot change those relationships or create an attorney-client relationship between LC and the agencies such that attorney-client privilege would apply. The state responded that, although, by statute, agencies generally must be represented by the Attorney General, there are statutory exceptions. In the state's view, ORS

---

[4] ORS 183.220 provides, in part:

"(1) The Department of Justice shall have:

"(a) General control and supervision of all civil actions and legal proceedings in which the State of Oregon may be a party or may be interested.

"(b) Full charge and control of all the legal business of all departments, commissions and bureaus of the state, or of any office thereof, which requires the services of an attorney or counsel in order to protect the interests of the state.

"(2) No state officer, board, commission, or the head of a department or institution of the state shall employ or be represented by any other counsel or attorney at law."

173.130, by implication in authorizing agencies to request the services of LC for bill drafting, creates such an exception for the bill-drafting process only. The request forms that facilitated that process, the state argued, were therefore within that relationship.

Plaintiff responded that LC's attorney-client relationship is with the legislature and that bill-drafting services that are provided to other branches of the government are for the benefit of the legislature. Plaintiff noted that, in serving the interests of their clients, attorneys often perform work for third parties—such as reviewing deeds, insurance policies or other contracts of a business to be acquired by the attorney's client—but doing so neither creates a lawyer-client relationship with those third parties nor brings those third parties within the scope of the lawyer-client privilege. Here, plaintiff contended, the legislature benefits by making LC's drafting services available to the other branches of government but providing those services does not change the identity of LC's client. Thus, plaintiff contended, even if drafting services are "legal services," they are performed within the context of the LC's representation of the Legislative Assembly; any privilege arising from that relationship does not extend to state agencies or to any other parties.

The trial court was persuaded by plaintiff's argument that LC and state agencies cannot have an attorney-client relationship and, for that reason, concluded that the request forms were not subject to an exemption from the Public Records Law as privileged attorney-client communications. The court issued a ruling from the bench granting plaintiff's summary judgment motion and denying the state's motion and entered a judgment declaring that the request forms were not subject to OEC 503 and directing DAS to disclose them.

On appeal, the state reprises its arguments made in its summary judgment motion. It is undisputed that the request forms are public records. The asserted basis for exemption from disclosure is that the forms are a communication subject to the lawyer-client privilege. *See* ORS 192.355(9)(a) (exempting from disclosure "[p]ublic records

or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law"); OEC 503 (providing a privilege for confidential "lawyer-client" communications). We held, in *Port of Portland*, 238 Or App at 409-10, that the lawyer-client privilege defined in OEC 503 applies under the public records disclosure laws when the public entity meets its burden to establish the privilege.[5] Plaintiff reprises its argument that the state has not met its burden, because LC and state agencies cannot be in an attorney-client relationship and that, therefore, no privilege applies.

As the Supreme Court said in *Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 355 Or 476, 487-88, 326 P3d 1181 (2014), although the statutory privilege "requires the existence of an 'attorney-client relationship' *in some sense*" (emphasis added), the existence of a sufficient relationship for the privilege is determined exclusively by reference to the statutory privilege rule itself—not by reference to other sources of law defining an attorney-client relationship. As we view the dispositive question on appeal, contrary to

---

[5] We recently addressed the interplay of the Public Records Law and the attorney-client privilege in a slightly different context in *City of Portland v. Bartlett*, 304 Or App 580, 468 P3d 980 (2020). There, the plaintiff sought disclosure under the Public Records Law of communications more than 25 years old between the city and its attorneys. ORS 192.390 provides that, notwithstanding ORS 192.355, "public records that are more than 25 years old shall be available for inspection." We recognized in *Bartlett* that

"OEC 503 protects attorney-client privileged information and ORS 192.355 (9)(a) provides that public bodies are exempt from disclosing privileged information. ORS 192.355(9) expressly recognizes that attorney-client privileged records are exempt from public disclosure. *See* ORS 192.355(9)(b) (referring to the OEC 503 attorney-client privilege and the treatment of factual information compiled in an otherwise attorney-client privileged public record)."

304 Or App at 589. We held, however, that those privileged communications were subject to the 25-year ultimate repose of ORS 192.390. As Judge Powers noted in his dissenting opinion, the lawyer-client privilege encourages "full and frank communication between lawyers and their clients," whether those clients are public bodies or private parties. 304 Or App at 605 (Powers, J., dissenting) (citing *Haas*, 325 Or at 500 (1997)).

ORS 192.355(1) provides for an exemption from disclosure for "[c]ommunications within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to any final agency determination of policy or action[.]" The state does not assert that the Request Forms, preliminary to LC's bill drafting and to the agency's ultimate decision whether to pre-session file a bill, are exempt from disclosure under that provision.

plaintiff's assumption, the existence of the privilege provided by OEC 503 does not depend on whether LC and the state agencies have what would be recognized as an attorney-client relationship in the conventional sense, that is, whether LC can be the agencies' legal counsel or attorney for purposes of providing legal representation. *See* ORS 9.350 (defining "attorney" as "a person authorized to represent a party in the written proceedings in any action, suit or proceeding, in any stage thereof"); ORS 183.220(2) ("No state officer, board, commission, or the head of a department or institution of the state shall *** be represented by any *** counsel or attorney at law [other than the Department of Justice]."). Rather, the question is whether they have a "lawyer-client" relationship as defined in OEC 503 that subjects their communications to the privilege defined in OEC 503. For that inquiry, our task is to determine the scope of the relationship and the privilege as defined in the statute.

In *Haas*, citing *State v. Jancsek*, 302 Or 270, 274, 730 P2d 14 (1986), the Supreme Court noted that the determination whether the lawyer-client privilege exists under OEC 503 hinges on three findings:

> "First, the communication must be 'confidential' within the meaning of OEC 503(1)(b). Second, the communication must be made for the purpose of facilitating the rendition of professional legal services to the client. Third, the communication must have been between persons described in one of the paragraphs of OEC 503(2)(a) through (e)."

Exemptions from disclosure under the Public Records Law are narrowly construed. *Guard Publishing Co. v. Lane County School Dist.*, 310 Or 32, 39, 791 P2d 854 (1990) ("A public body may not exempt itself from its responsibilities under the Inspection of Public Records law by adopting a policy that seeks to deprive citizens of their right under the law to inspect public records. Disclosure is the norm; exclusion is the exception that must be justified by the public body.").

When an exemption is claimed, it is the public body's burden to justify it. *In Defense of Animals v. OHSU*, 199 Or App 160, 168, 112 P3d 1114 (2005); ORS 192.431(1) (the

burden is on the public body to "sustain its action" withholding public records). Considering each element, we conclude that the state has met its burden here.

The parties agree that LC's bill-drafting services are legal services, and they do not dispute that DAS sent the request forms to LC for the purpose of facilitating those services.

It is not disputed that DAS expressed the intention to keep the request forms confidential and that LC treated the request forms as confidential, and we conclude that the record on summary judgment requires the finding that they were intended to be confidential. But the attorney-client privilege can be waived if the holder of the privilege "voluntarily discloses or consents to disclosure of any significant part of the matter or communication." OEC 511 (codified at ORS 40.280). Plaintiff asserts that DAS could not treat the request forms as confidential or that DAS waived the lawyer-client privilege by stating on the forms that "it is expected that agencies will have discussed legislative concept ideas with stakeholders." We reject the contention. An agency's discussion of the substance of a bill concept with stakeholders does not prevent the agency from keeping its bill-drafting requests to LC confidential. *See Teamey*, 207 Or App at 260 n 3 (holding that confidential lawyer-client communications themselves were privileged even if facts underlying confidential communications were not privileged). Additionally, the fact that DAS expressed an intention to keep the forms confidential only "temporarily" did not waive the privilege or preclude DAS from later asserting confidentiality and declining to disclose them. There is no aspect or element of the privilege described in OEC 503 that prohibits a person from temporarily maintaining confidentiality.

The remaining question is whether the communications were between persons described in OEC 503(1).

OEC 503(1)(c) defines a "lawyer" as "a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation." The responsibilities of LC are set forth in ORS chapter 173. The person serving as Legislative Counsel need not be a member of the Oregon

State Bar but must "be a person authorized to practice law in the highest court of one of the states of the United States." Thus, the person serving as Legislative Counsel is a "lawyer," as that term is defined in OEC 503.

OEC 503(1)(a)(A) defines a "client" as "[a] person, public officer, corporation, association or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer." A "client" is a person to whom professional legal services have been rendered or who has consulted with a lawyer for professional legal services. It is not disputed that the services provided by LC are professional legal services and that the agency's request forms were provided to LC for the purpose of facilitating those services.

If the requirements of the privilege are met, the documents are unconditionally exempt from disclosure. *Teamey*, 207 Or App at 260-61. OEC 503(2) provides that "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." DAS has refused to disclose the request forms provided to LC for the purpose of the rendition of professional legal services in drafting legislation.

We have rejected plaintiff's contentions that, because DAS initially intended to disclose the request forms after the bills were drafted and submitted pre-session, the communications were not confidential or that any privilege was waived by the agencies. Thus, we conclude that the request forms are exempt from disclosure under the lawyer-client privilege described in OEC 503. For that reason, the trial court erred in granting plaintiff's motion for summary judgment and denying the state's motion for summary judgment.

Reversed and remanded.