Argued and submitted June 8; decision of Court of Appeals affirmed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings October 27, 2022

Gregory A. CHAIMOV,
*Petitioner on Review,*

*v.*

STATE OF OREGON,
by and through the Oregon
Department of Administrative Services,
*Respondent on Review.*

(CC 18CV39159) (CA A169203) (SC S069038)

520 P3d 406

Plaintiff filed a public records request for forms that had been prepared by state Executive Branch agencies in 2018. These forms were prepared for the Governor to request bill-drafting services by the Office of Legislative Counsel, part of the Legislative Branch. The Department of Administrative Services (DAS) denied the request, concluding that the forms were protected by the attorney-client privilege. In plaintiff's subsequent civil action, the circuit court rejected DAS's interpretation, but the Court of Appeals agreed that the attorney-client privilege applied and reversed. *Held*: (1) Documents that are subject to the attorney-client privilege of OEC 503 are exempt from disclosure under Oregon's Public Records Law by ORS 192.355(9)(a); (2) the legal services that the Office of Legislative Counsel provides in connection with bill drafting under ORS 173.130(2) are provided to the Governor rather than the Legislative Assembly; and (3) the request forms here were otherwise "confidential communications" made for the purpose of facilitating the rendition of professional legal services to the "client," as those terms are defined in OEC 503, and thus were protected by the attorney-client privilege.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

En Banc

On review from the Court of Appeals.*

John DiLorenzo, Jr., Davis Wright Tremaine LLP, Portland, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Chris Swift and Verónica Muriel Carrioni.

_____

* Appeal from Marion County Circuit Court, Audrey J. Broyles, Judge. 314 Or App 253, 498 P3d 830 (2021).

Jona J. Maukonen, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Jack L. Orchard, Ball Janik LLP, Portland, filed the brief for *amici curiae* Oregon Newspaper Publishers Association *et al*. Also on the brief was Adele J. Ridenour, Portland.

DeHOOG, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**DeHOOG, J.**

The issue in this civil action is whether completed request forms prepared by state agencies seeking draft legislation from the Office of Legislative Counsel[1] are subject to disclosure under Oregon's Public Records Law, ORS 192.311 to 192.431. The Department of Administrative Services (DAS) contends that the request forms fall within the attorney-client privilege under OEC 503 and so are exempted from disclosure under the Public Records Law by ORS 192.355 (9)(a). The trial court granted summary judgment for plaintiff, holding that the request forms were not exempt and ordering their disclosure, but the Court of Appeals reversed, concluding that they were subject to the attorney-client privilege. *Chaimov v. Dept. of Admin. Services*, 314 Or App 253, 498 P3d 830 (2021). On review, we affirm the decision of the Court of Appeals and reverse the judgment of the trial court.

## I.  BACKGROUND

A.  *Overview*

Plaintiff made the underlying public records request in July 2018, seeking copies of completed request forms used by state agencies to propose legislation for the 2019 legislative session. Individual state agencies had completed approved blank forms and then submitted them to DAS for the Governor to decide whether to request that the Office of Legislative Counsel prepare draft bills. We describe that process in some detail below, together with the facts and procedural background, because it is central to the parties' dispute.

B.  *Facts and Legal Context*

The Oregon Constitution authorizes the Governor to "recommend" legislation to the Legislative Assembly. Article V, section 11, provides:

"[The Governor] shall from time to time give to the Legislative Assembly information touching the condition

---

[1] The parties frequently use "Legislative Counsel" to mean both the collective Office of Legislative Counsel and the individual head of that office. As that creates some risk of confusion, we will (in general) use Legislative Counsel to refer only to the person who heads the Office of Legislative Counsel.

of the State, and reccommend [*sic*] such measures as [s]he shall judge to be expedient[.]"

Our concern here is with the mechanism by which those recommendations are made.

### 1.    *Requests for bill drafting by state agencies*

As one aspect of deciding what legislation to request, the Governor first seeks recommendations from state agencies. To propose legislation, agencies are required to use an approved request form describing proposed legislative concepts. The Governor reviews the submitted proposals and decides whether to request the legislation based on the legislative concepts proposed in the completed request forms.

To prepare for the 2019 legislative session, DAS notified state agencies to submit their proposals using the approved request form, entitled "2019 Agency Request to Office of Legislative Counsel for Drafting of Legislation." The form had been changed from previous years in at least two relevant respects. First, the request form stated at the top: "Confidential and Attorney-Client Privileged." Second, that designation was immediately followed by this paragraph:

> "This document is a request for legal services. By completing this form, the named agency asks the Office of Legislative Counsel to draft legislation for introduction in the 2019 Legislative Session based on the instructions below. Although it is expected that agencies will have discussed legislative concept ideas with stakeholders, agencies are directed to treat this document as confidential and privileged and, accordingly, not to share the text of this form outside of state government before legislation is drafted and finalized[.]"

(Emphasis omitted.)

The blank request form then set out several text boxes that appear largely unchanged from prior years. Among other things, the form asked the agency to provide the following information:

- "Problem (Completely describe the problem you propose to solve.)"

- "Proposed Solution (Completely describe what the concept does to fix the problem. Do not include proposed statute changes here.)"

- "Proposed Changes to Statute (Please attach your best attempt at proposing changes to statute to accomplish your goal; [h]owever, Legislative Counsel may draft alternate language.)"

(Emphases omitted.)

DAS separately informed state agencies that completed request forms would "'be temporally [*sic*] exempt from disclosure [under the Public Records Law] until Legislative Counsel has submitted bill drafts to the Governor's Office for final approval (this should be done by November 30, 2018).'" (First brackets added.)

2. *Office of Legislative Counsel*

As noted, for proposals that the Governor approves, the completed request forms are submitted to the Office of Legislative Counsel for bill drafting. The Legislative Assembly created that office in 1953. Or Laws 1953, ch 492; *see* Gregory Chaimov, *How an Idea Really Becomes Law: What Only Jacques Cousteau Can Know*, 36 Willamette L Rev 185, 190 (2000). By House and Senate rules, bills submitted to the Legislative Assembly must be drafted by that office. Rule 213.07, Rules of the Oregon Senate 2017-18; Rule 12.20(1), Rules of the Oregon House 2017-18.

The office is headed by Legislative Counsel, a position that can be held only by an attorney. *See* ORS 173.200(1) (Legislative Counsel must be "a person authorized to practice law in the highest court of one of the states of the United States"). At the relevant time, the Office of Legislative Counsel consisted of Legislative Counsel (in fact a licensed Oregon attorney), an additional 18 attorneys, and 28 non-attorney staff.

Legislative Counsel is chosen by, and "serve[s] at the pleasure of," the Legislative Counsel Committee. ORS 173.200. The committee is a joint committee of the Legislative Assembly. ORS 173.111. Its membership consists of the Speaker of the House of Representatives and the

President of the Senate, plus those members of the House and Senate whom they select. ORS 173.191(1)(a).

### 3. *Mechanics of bill drafting*

The following describes the steps that the Office of Legislative Counsel takes when it receives a request for a bill.[2] When a request for a bill is received, it is assigned to an appropriate specialist attorney. Chaimov, 36 Willamette L Rev at 191 (explaining that the attorneys in the Office of Legislative Counsel specialize in particular subject matters). The attorney first reviews the request to determine what the requester is trying to achieve and, if necessary, will contact the requester for clarification. *Id*.

The attorney then researches the relevant legal framework surrounding the proposal, including substantive and procedural limitations. As summarized by the current Legislative Counsel in the proceeding below:

> "For example, the attorney may research whether federal law or substantive provisions of the state or federal constitution bar[] the approach suggested in the request. The attorney must consider whether procedural requirements in the Oregon Constitution, such as the requirement that bills consist of a single subject, are satisfied. The attorney must research whether the proposal would modify or otherwise affect existing laws or programs."

*See also* Chaimov, 36 Willamette L Rev at 191-92 ("the attorney researches the issue to determine whether the law permits the attorney to fulfill the request" until "satisfied that the law allows the requested bill").

If legal problems are discovered, then the attorney communicates that to the requester and may suggest changes or alternatives to solve the problem. Again, in the words of the current Legislative Counsel:

> "[I]t is up to the requester to decide whether to proceed in the face of identified constitutional or other issues. However, the attorneys in the Office of Legislative Counsel

---

[2] Although the underlying facts are undisputed and are part of the summary judgment record, the citations are to a law review article that confirms those facts (and that was written by plaintiff, who previously served as Legislative Counsel).

are expected to communicate relevant legal findings so that the requester can make an informed decision. The [attorney] may also, if appropriate, advise the requester regarding options for modifying the proposal to avoid the problems identified."

As Legislative Counsel further explained, the attorney then prepares a draft bill that, "in the attorney's judgment, best accomplishes the policy goals outlined in the request and has the best chance of resulting in a legally defensible bill." The draft bill is then proofread and copy-edited by staff.

C. *Public Records Request; Civil Action; and Court of Appeals Decision*

In 2018, state agencies submitted 270 completed request forms proposing legislation to DAS for gubernatorial review. The Governor rejected five, and the agencies withdrew 31. A total of 234 request forms were ultimately submitted to the Office of Legislative Counsel for bill drafting.

In July 2018, plaintiff submitted a public records request to DAS under Oregon's Public Records Law. He sought copies of the completed request forms that state agencies had prepared for the 2019 legislative session. DAS denied the request, asserting that the request forms were exempt from disclosure because they were attorney-client privileged. Plaintiff sought review of that decision by the Attorney General, who agreed with DAS.

Plaintiff then filed a civil action in circuit court to require DAS to produce the completed request forms. The parties filed cross-motions for summary judgment. Plaintiff argued (among other things) that there could be no attorney-client privilege between a state agency and the Office of Legislative Counsel. He reasoned that, under ORS 173.130(5), the Office of Legislative Counsel provided legal services only to the Legislative Assembly, while ORS 180.220 required state agencies to obtain their legal services only from the Department of Justice. The trial court agreed with plaintiff that the Office of Legislative Counsel did not have an attorney-client relationship with the state agencies, and it ordered DAS to produce the request forms.

        DAS appealed to the Court of Appeals, which reversed. *Chaimov*, 314 Or App 253. The court concluded that the elements of the attorney-client privilege set out in OEC 503 were met: Bill-drafting services are legal services, *id*. at 266; Legislative Counsel is a "lawyer," and the state agencies who request bill-drafting services are "clients," as those terms were defined in that evidentiary rule, *id*. at 266-67; and the request forms were intended to be confidential, *id*. at 266.

        Plaintiff sought review, which we allowed.

## II.   DISCUSSION

        Because the trial court granted summary judgment for plaintiff, we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the party opposing the motion—here, DAS—to determine whether plaintiff demonstrated that he was entitled to judgment as a matter of law. *See, e.g.*, *Portfolio Recovery Associates, LLC v. Sanders*, 366 Or 355, 357, 462 P3d 263 (2020) (setting out standard). As the facts here are essentially undisputed, our primary concerns relate to how the law applies to those facts.

        The legal issues here involve several different statutes, which we analyze using our established interpretation methodology. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (court considers statutory text and context, as well as legislative history, giving the latter such weight as the court deems appropriate). If the legislative intent remains ambiguous following those considerations, we may consider general maxims of statutory interpretation. *Gaines*, 346 Or at 172.

### A.   *Oregon's Public Records Law*

        We begin with Oregon's Public Records Law. The general principle—which generally favors disclosure—is set out in ORS 192.314(1):

   "Every person has a right to inspect any public record of a public body in this state, except as otherwise expressly provided by ORS * * * 192.355."

*See generally City of Portland v. Rice*, 308 Or 118, 121-22, 775 P2d 1371 (1989) (noting Oregon's "strong and pervasive" policy mandating disclosure of public records). The quoted cross-reference, ORS 192.355, is one of the statutes setting out exemptions to the Public Records Law. It provides, in part:

> "The following public records are exempt from disclosure under ORS 192.311 to 192.478:
>
> "\* \* \* \* \*
>
> "(9)(a)   Public records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law."

The parties do not dispute that the exemption for confidential or privileged materials set out in ORS 192.355(9)(a) includes the attorney-client privilege. *See City of Portland v. Bartlett*, 369 Or 606, 612, 509 P3d 99 (2022) (catchall provision of ORS 192.355(9)(a) "generally exempts communications \* \* \* subject to the attorney-client privilege from the otherwise applicable disclosure requirements of the public records law").

At several points, plaintiff does observe that, because the Public Records Law favors access to governmental records, "[e]xemptions from disclosure are to be narrowly construed." *Guard Publishing Co. v. Lane County School Dist.*, 310 Or 32, 37, 791 P2d 854 (1990). However, because there is no question whether the exemption in ORS 192.355(9)(a) includes the attorney-client privilege, there is nothing for us to construe "narrowly." Rather, the interpretive issue to be decided here is whether the completed request forms were subject to the attorney-client privilege, OEC 503. We therefore turn to that question.

B.   *Attorney-Client Privilege*

Before considering whether the completed request forms fall within the scope of the attorney-client privilege set out in OEC 503, we provide a brief overview of that provision. Although often referred to as a "rule," the privilege as set out in OEC 503 is in fact a statute, enacted by the legislature and codified at ORS 40.225. We therefore apply our established statutory interpretation methodology to it

as well. *Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 355 Or 476, 485, 326 P3d 1181 (2014).[3]

The privilege itself is set out in OEC 503(2), which provides, in part:

"A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:

"(a) Between the client or the client's representative and the client's lawyer or a representative of the lawyer;

"* * * * *

"(d) Between representatives of the client or between the client and a representative of the client[.]"

Many of those terms are expressly defined in OEC 503(1). The relevant definitions are as follows:

"(1) As used in this section, unless the context requires otherwise:

"(a) 'Client' means:

"(A) A person, public officer, corporation, association or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from a lawyer.

"* * * * *

"(b) 'Confidential communication' means a communication not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

---

[3] Relying on two Court of Appeals opinions, plaintiff contends—as he did with regard to the Public Records Law—that the attorney-client privilege must be narrowly construed. As we explain below (370 Or at 398 n 7), such maxims of statutory interpretation are not considered unless the statutory text remains ambiguous following our examination of the text in context and any helpful legislative history. And, as with the Public Records Law, plaintiff does not argue that the statute codifying the attorney-client privilege is ambiguous. Accordingly, there is no basis for us to consider whether a "narrowing construction" maxim would otherwise apply.

"(c)    'Lawyer' means a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation.

"* * * * *

"(e)    'Representative of the client' means:

"(A)    A principal, an officer or a director of the client; or

"(B)    A person who has authority to obtain professional legal services, or to act on legal advice rendered, on behalf of the client, or a person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the person's scope of employment for the client."

We address the parties' contentions about application of the attorney-client privilege to the completed request forms by answering three separate questions, set out below. As will be seen, we agree with DAS as to each question.

1.    *Is the Office of Legislative Counsel providing legal services to state agencies?*

Plaintiff does not dispute that Legislative Counsel meets the definition of "lawyer" or that the bill-drafting functions performed by the Office of Legislative Counsel constitute "legal services." He contends instead that the legal services provided by that office are rendered solely to the Legislative Assembly, not DAS or any other state agency. Plaintiff thus asserts that a state agency cannot be the "client" of the Office of Legislative Counsel, and so the communications contained in the completed request forms were not made to facilitate the rendition of professional legal services to the state agency.[4]

To resolve that question, we begin with ORS 173.130, the statute authorizing the Office of Legislative Counsel to provide bill-drafting services both to the Legislative Assembly and to state agencies. It provides, in part:

---

[4] As discussed briefly below, requests for bill drafting are formal requests for legislation by the Governor, so the "client" would appear to be the Governor rather than the state agency. The state agencies would thus be "representatives of the client," as that term is defined in OEC 503(1)(e).

"(1)   The Legislative Counsel shall prepare or assist in the preparation of legislative measures when requested to do so by a member or committee of the Legislative Assembly.

"(2)   Upon the written request of a state agency, the Legislative Counsel may prepare or assist in the preparation of legislative measures that have been approved for preparation in writing by the Governor or the Governor's designated representative. *** In accordance with ORS 283.110, the Legislative Counsel may charge the agency or officer for the services performed.

"* * * * *

"(5)   *** Except as provided in subsection (2) of this section and ORS 173.135, the Legislative Counsel shall not give opinions or provide other legal services to persons or agencies other than the Legislative Assembly and members and committees of the Legislative Assembly."

All the completed request forms at issue here were written requests submitted by a state agency for the Governor's approval. Most of them were approved by the Governor and submitted to the Office of Legislative Counsel for it to "prepare or assist in the preparation of legislative measures." ORS 173.130(2). Accordingly, the Office of Legislative Counsel was authorized to provide bill-drafting services related to those forms under that statute.

Notably, subsections (1) and (2) of ORS 173.130 use identical text to describe the services that the Office of Legislative Counsel provides to both the Legislative Assembly *and* state agencies: In either case, the office is "prepar[ing] or assist[ing] in the preparation of legislative measures." The statute, therefore, does not distinguish the bill-drafting services provided to the Legislative Assembly from those provided to a state agency.[5]

---

[5] Compare ORS 173.140, which uses different text. It directs the Office of Legislative Counsel to "*cooperate* with the proponents of an initiative measure in its preparation" (emphasis added), when requested by at least 50 electors in writing and the Legislative Counsel Committee believes there is a reasonable probability that the initiative will be submitted to the voters. Even if the textual difference in services were not dispositive, ORS 173.130(5) would prohibit the Office of Legislative Counsel from providing legal services to such initiative petitioners.

The history of ORS 173.130 confirms that the services provided are the same. When that statute was first enacted in 1953, it consisted of a single section that expressly equated the services provided to the Legislative Assembly with the services provided to state agencies:

> "The Legislative Counsel shall prepare or assist in the preparation of legislative measures when requested to do so by a member of the Legislative Assembly. Upon the written request of a state agency the Legislative Counsel may perform a similar service for the agency."

Or Laws 1953, ch 492, § 3 (quoted in part).

Neither ORS 173.130(1) nor (2) prescribes the specific services that the Office of Legislative Counsel will render to either the Legislative Assembly or state agencies. Factually, however, those services are primarily legal services, provided by the attorneys in the Office of Legislative Counsel and directed toward the requester. The attorneys interpret the policy goals of the request. They contact the requester for any needed clarification. They do legal research to determine the steps needed to lawfully accomplish the bill's goals. And they make recommendations to the requester regarding any changes needed to make the bill lawful and constitutional.

In the circumstances here, it is actually the Governor—and not the state agencies—who is the formal requester. The legal services provided by the Office of Legislative Counsel under ORS 173.130(2) are directed toward the Governor (through her representative, the state agency), not toward the Legislative Assembly. The Governor thus appears to be the "client" of the Office of Legislative Counsel, as that term is defined in the attorney-client privilege: The Governor is a "public officer *** who is rendered professional legal services by a lawyer." OEC 503(1)(a)(A). For their part, the state agencies (and DAS) are "representatives of the client" as that term is defined in OEC 503(1)(e)(B): They have "authority to obtain professional legal services, or to act on legal advice rendered, on behalf of the client," and, "for the purpose of effectuating legal representation for the client, [they] make[] or receive[] a confidential communication while acting in the person's scope of employment for the client."

Plaintiff argues, however, that—as a matter of law—the Office of Legislative Counsel cannot be providing legal services to the Executive Branch. In support of that argument, plaintiff points to certain statutes that, in his view, provide that the Office of Legislative Counsel can provide legal services only to the Legislative Assembly, while the Executive Branch can obtain legal services only from the Department of Justice.

Plaintiff's first contention relies on the last clause of the last sentence of ORS 173.130(5), which provides that "the Legislative Counsel shall not give opinions or provide other legal services to persons or agencies other than the Legislative Assembly and members and committees of the Legislative Assembly." If that sentence contained no exceptions, then plaintiff's contention might resolve this matter in his favor. The sentence's full text, however, expressly permits the Office of Legislative Counsel to give legal advice and services to state agencies. Although that office generally is forbidden from "giv[ing] opinions or provid[ing] other legal services to persons or agencies other than the Legislative Assembly," subsection (5) expressly exempts subsection (2) from that prohibition, stating, "[e]xcept as provided in subsection (2)." There would be no reason to exempt services provided under subsection (2) unless the Legislative Assembly understood that the Office of Legislative Counsel would be providing legal services to state agencies when it "prepare[d] or assist[ed them] in the preparation of legislative measures." Plaintiff offers no alternative explanation for why that exemption was needed, and his contention would functionally read the exception out of the statute.

The history of the statute confirms as much. What is now ORS 173.130(5) was first enacted in 1999. Or Laws 1999, ch 117, § 2. As originally enacted, it unqualifiedly prohibited the Office of Legislative Counsel from providing legal advice to anyone other than the Legislative Assembly:

> "The Legislative Counsel shall not give opinions or other legal advice to persons or agencies other than the Legislative Assembly and members and committees of the Legislative Assembly."

*Id*; ORS 173.130(5) (1999). But in the next legislative session, the Legislative Assembly specifically amended the text to make subsection (2) an exception to that prohibition. The act made the following changes:

> "**Except as provided in subsection (2) of this section** \* \* \*, the Legislative Counsel shall not give opinions or **provide** other legal [*advice*] **services** to persons or agencies other than the Legislative Assembly and members and committees of the Legislative Assembly."

Or Laws 2001, ch 45, § 2 (new text in boldface; deleted text in brackets and italics). Thus, it is apparent that the Legislative Assembly intended to permit the Office of Legislative Counsel to provide legal services to state agencies through the drafting process of ORS 173.130(2).

As noted, plaintiff also approaches the issue from the other side, contending that state agencies are prohibited by statute from obtaining legal services from the Office of Legislative Counsel. He relies specifically on ORS 180.220, which provides, in part:

> "(1)   The Department of Justice shall have:

> "\* \* \* \* \*

> "(b)   Full charge and control of all the legal business of all departments, commissions and bureaus of the state, or of any office thereof, which requires the services of an attorney or counsel in order to protect the interests of the state.

> "(2)   No state officer, board, commission, or the head of a department or institution of the state shall employ or be represented by any other counsel or attorney at law."

Plaintiff acknowledges that that statute has exceptions that it does not expressly cross-reference. *See, e.g.*, ORS 1.550 (when Attorney General declines to represent judge, judge may "employ private counsel"); ORS 352.087(1)(o) (public universities may "[h]ire or retain attorneys for the provision of all legal services." Plaintiff does not, however, explain why those unenumerated exceptions apply to ORS 180.220, but ORS 170.130(2) does not.

In any event, that argument by plaintiff also fails. When the legislature enacts a statute, we presume that it proceeds with an awareness of existing law. *E.g.*, *Ryerse v. Haddock*, 337 Or 273, 280-81, 95 P3d 1120 (2004) (so explaining); *State v. Waterhouse*, 209 Or 424, 436, 307 P2d 327 (1957) ("Knowledge on the part of the legislature of these earlier enactments is presumed[.]"). Here, the legislature made the Department of Justice the exclusive provider of legal services to state entities in 1947. Or Laws 1947, ch 556, § 2. The legislation relating to Legislative Counsel is more recent, as the position did not exist until 1953. Or Laws 1953, ch 492, § 1; *see* Chaimov, 36 Willamette L Rev at 190 (so noting). Thus, both when the legislature first permitted Legislative Counsel to provide bill-drafting services to state agencies (Or Laws 1953, ch 492, § 3), and when the legislature amended ORS 173.130 to clarify that the Office of Legislative Counsel could provide legal services to state agencies (Or Laws 2001, ch 45, § 2), the legislature would have understood that it was creating an exception to ORS 180.220.

Finally, plaintiff asserts that this interpretation of the pertinent statutes would violate the separation of powers mandated by Oregon Constitution, Article III, section 1. Broadly speaking, a separation-of-powers violation exists when either "one department of government has 'unduly burdened' the actions of another department in an area of responsibility or authority committed to that other department" or "one department is performing the functions committed to another department." *Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 28, 902 P2d 1143 (1995). Plaintiff contends that authorizing the Office of Legislative Counsel to provide legal services to state agencies—even though only in the context of drafting a bill for the Legislative Assembly to consider—would "have the legislative department 'perform[] the functions committed to another department' and usurp the executive branch's exclusive power to represent itself through the Department of Justice." (Quoting *Rooney*, 322 Or at 28 (brackets in original).)

We reject that argument. First, plaintiff fails to establish that the Oregon Constitution—not merely ORS 180.220—commits to the Department of Justice the exclusive

function of providing *all* legal advice to state agencies.[6] Accordingly, he has not shown that the Office of Legislative Counsel, by providing legal services limited to drafting bills intended to be presented to the Legislative Assembly, is "performing the functions committed to another department." *Rooney*, 322 Or at 28.

Second, plaintiff does not show that the statutory *authorization* for the Office of Legislative Counsel to give legal advice to a state agency, solely in connection with bill drafting, amounts to a *prohibition* on the state agency obtaining legal advice about the matter from the Department of Justice. A state agency could obtain legal services from both, even in connection with the same question. Thus, plaintiff also fails to show that legal advice by the Office of Legislative Counsel "unduly burdened" the Executive Branch's authority to provide its own legal advice. *Id*.

Accordingly, we agree with DAS. For purposes of the attorney-client privilege as defined in OEC 503, the Governor is the "client"; the state agencies and DAS are "representatives of the client"; the Office of Legislative Counsel is a "lawyer"; and the completed request forms were "communications made for the purpose of facilitating the rendition of professional legal services to the client."[7] That, however, does not address whether the request forms were confidential. We now turn to that question.

2.  *Were the completed request forms confidential communications?*

Plaintiff contends that, as a factual matter, the completed request forms do not meet the definition of "confidential communications" contained in OEC 503(1)(b) and

---

[6] Plaintiff cites this court's decision in *Frohnmayer v. SAIF*, 294 Or 570, 577-78, 660 P2d 1061 (1983), but that case addressed only the statutory directive of ORS 180.220. The opinion did not hold that the Oregon Constitution compelled the substance of that statute.

[7] As noted above, plaintiff contends that the attorney-client privilege must be narrowly construed. However, we do not consider maxims purporting to require a broad or narrow construction of a statute unless the legislature's intent remains ambiguous following consideration of the statute's text, context, and legislative history. *See PGE v. Bureau of Labor and Industries*, 317 Or 306, 612, 859 P2d 1143 (1993) (so stating); *Gaines*, 346 Or at 172 (same). Here, our consideration of those matters leaves no apparent ambiguity, and plaintiff identifies none. Thus, we need not consider whether any such maxim would otherwise apply.

thus are not protected by the privilege. That rule defines a "confidential communication" as

> "a communication not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."

Plaintiff first argues that the communications are not confidential because the Office of Legislative Counsel might disclose them to the Legislative Counsel Committee. (Plaintiff does not contend that any of these request forms were in fact disclosed to the committee.) The statute on which he relies, ORS 173.230(1), arguably contemplates such disclosure, providing, in part:

> "The Legislative Counsel or any employee of the Legislative Counsel Committee may not reveal to any person not an employee of the committee the contents or nature of any matter before the Legislative Counsel in the official capacity of the Legislative Counsel, if the person bringing the matter before the Legislative Counsel or employee designates the matter as confidential."

It is undisputed that the completed request forms were designated as confidential, so, as a preliminary matter, they fall within the scope of that statute.

Furthermore, the possibility of disclosure to the Legislative Counsel Committee or its employees would not seem to remove the request forms from the scope of the attorney-client privilege, because the definition of "confidential communication" in OEC 503(1)(b) is not absolute. That is, although the client must intend the communication to be confidential, the definition expressly contemplates that the communication may be disclosed to "third persons *** to whom disclosure is in furtherance of the rendition of professional legal services to the client." OEC 503(1)(b); *see* Legislative Commentary to OEC 503, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 503.02, 329 (7th ed 2020) (definition of "confidential communication" "allows some disclosure beyond the immediate circle of lawyer and client and their representatives without impairing confidentiality, as a practical matter"). As noted previously, the Legislative

Counsel Committee is the supervising body for the Office of Legislative Counsel. If some circumstance requires the Office of Legislative Counsel, in performing its statutorily authorized functions, to disclose the request form to its supervising body, then that disclosure would appear to be "in furtherance of the rendition of professional legal services [by the Office of Legislative Counsel] to the client." The extension of confidentiality to the Legislative Counsel Committee by ORS 173.230(1) confirms that disclosure to the committee would not deprive the communication of its confidential nature. Plaintiff offers no analysis to undermine that conclusion.

Plaintiff also argues that the completed request forms were not confidential because some of the information contained in the completed forms may previously have been discussed with stakeholders when addressing the policies at issue in the legislative concepts. At its core, this is a claim that the attorney-client privilege applies only to confidential *facts* rather than confidential *communications*: Plaintiff functionally claims that the privilege never applies to any communication with an attorney if the communication addresses matters known to anyone other than the client.

That argument finds no support in OEC 503. The privilege protects a client's "*communication*[*s*]" with an attorney; it says nothing about the confidentiality of the facts to which the communication relates. *See* OEC 503(1)(b) (defining "confidential *communication*" as a "*communication* not intended to be disclosed to third persons" (emphases added)); *see also* Legislative Commentary to OEC 503, *reprinted in* Kirkpatrick, *Oregon Evidence* § 503.02 at 329 (stating that a *communication* is not confidential if "made in public or meant to be relayed to outsiders or which is divulged to third persons by the client or by the lawyer at the direction of the client").

Of course, a person can waive a privilege by disclosing the communication. *See* OEC 511 (waiver if holder of privilege "voluntarily discloses or consents to disclosure of any significant part of the matter or communication"). But "[a] person, merely by disclosing a *subject* which the person has discussed with an attorney * * *, does not waive

the applicable privilege; the person must disclose part of the communication itself in order to effect a waiver." Legislative Commentary to OEC 511, *reprinted in* Kirkpatrick, *Oregon Evidence* § 511.02 at 439 (emphasis added). As Professor Kirkpatrick has elaborated:

> "Only the communication is privileged, not the holder's knowledge of the facts. Therefore, the holder may disclose the facts to third persons without waiving the privilege. For example, a client may speak freely to nonprivileged persons about the facts of an automobile accident without waiving the right to prevent the attorney from being questioned regarding specific communications from the client about that accident."

Kirkpatrick, *Oregon Evidence* § 511.03[1] at 441.[8]

In this case, the request forms expressly distinguished between the "legislative concept *ideas*," which are to be "discussed" with "stakeholders," and the form itself, which agencies are directed to "treat \*\*\* as confidential and privileged," and which furthermore directed the agencies "not to share *the text of this form* outside of state government." (Emphases added.) Thus, there is a clear and expressed intent that the completed forms be kept confidential. Moreover, plaintiff has presented no evidence that state agencies shared what were intended to be confidential forms with anyone other than the Office of Legislative Counsel.

Plaintiff finally asserts that the completed request forms at issue here were not confidential at any point in time, because DAS had warned state agencies that the forms could be subject to disclosure at some point in the future.[9] Again, we reject plaintiff's argument. Confidentiality as defined in OEC 503(1)(b) focuses on the client's intent. *Id.*

---

[8] The attorney-client privilege would be largely destroyed if clients could seek confidential advice only when the underlying matters were known only to the client. Whether in criminal cases, civil tort actions, contract disputes, or otherwise, it is rare for a client to consult an attorney when it does *not* concern matters, facts, discussions, or events known to at least one other person.

[9] As noted previously, the department had informed state agencies that the completed request forms would be

"temporally [*sic*] exempt from disclosure [under the Public Records Law] until Legislative Counsel has submitted bill drafts to the Governor's Office for final approval (this should be done by November 30, 2018)."

(communication is confidential if "not intended to be disclosed to third persons"); *see* Legislative Commentary to OEC 503, *reprinted in* Kirkpatrick, *Oregon Evidence* § 503.02 at 329 ("A confidential communication is defined in terms of intent."). There is no evidence that the state agencies or DAS *intended* to disclose the forms at any time. The state agencies were only warned that the forms *might* be disclosed in the future, which is not the same. Plaintiff's position implies that thinking the thing would make it true: that contemplating the possibility that one might at some time not have the attorney-client privilege would automatically dissolve the right to claim the privilege at any time. Plaintiff's argument also implies that the privilege would never come into being at all if a client were to communicate with an attorney about a pleading, declaration, motion, or testimony that was intended—or even only contemplated—to be disclosed to a court in the future. The text of OEC 503 does not support such a narrow application of the attorney-client privilege.

We therefore agree with DAS on the second question: The attorney-client privilege applies to the completed request forms, or at least those forms that DAS submitted to the Office of Legislative Counsel. We have not yet addressed the forms that were never submitted to the Office of Legislative Counsel, and we turn to that question now.

3.  *Does the privilege apply to completed request forms never submitted to the Office of Legislative Counsel?*

Plaintiff finally contends that the forms that were never submitted to the Office of Legislative Counsel—either the five that the Governor declined to approve or the 31 withdrawn by the state agencies—are not subject to the attorney-client privilege. Plaintiff's argument relies on text from OEC 503(2):

> "*** DAS has never explained how documents that were never communicated to a lawyer could still be 'confidential communications' between 'the client' and the 'client's lawyer,' as required by OEC 503(2)."

Plaintiff's quotations from OEC 503(2) omit those parts of the rule that undermine his argument. The text of OEC 503(2) does not require that the communication be

delivered to the attorney. If it is a "confidential communication[] made for the purpose of facilitating the rendition of professional legal services," then the communication is protected, even if it is "[b]etween representatives of the client or between the client and a representative of the client[.]" OEC 503(2)(d). Here, the request forms were kept confidential. Their purpose was to facilitate the Governor obtaining the legal services associated with bill drafting. And they were communicated between only the client (the Governor) and representatives of the client (the state agencies). Accordingly, the privilege attached immediately and was not contingent on subsequent delivery to the Office of Legislative Counsel.

### III.   CONCLUSION

We conclude that the attorney-client privilege of OEC 503 applied to the completed request forms that state agencies submitted to DAS for the Governor's approval, for purposes of future bill drafting. First, the Office of Legislative Counsel provides legal services in connection with bill drafting. Second, when the Governor (through her representatives) requests bill drafting, the Office of Legislative Counsel is providing legal services to her as it is statutorily authorized to do, and not to the Legislative Assembly. Third, the request forms had been kept confidential and thus qualified as confidential communications.

Because the attorney-client privilege applies to the completed request forms, ORS 192.355(9)(a) makes them exempt from disclosure under the Public Records Law. The trial court therefore erred in granting summary judgment for plaintiff and in denying DAS's motion for summary judgment.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.